Sara SHARPE, Appellant,

v.

Barton KILCOYNE, Appellee.

No. 2–96–254–CV.

Court of Appeals of Texas,
Fort Worth.

Feb. 12, 1998.

Keith Harvey, Davis & Harvey, Dallas, for appellant.

Gregory A. Whittmore, Dallas, for appellee.

Before LIVINGSTON, DAUPHINOT and RICHARDS, JJ.

## OPINION

LIVINGSTON, Justice.

### I. INTRODUCTION

Appellant Sara Sharpe appeals the trial court's post-answer default judgment and denial of her motion for new trial in appellee Barton Kilcoyne's breach of contract, fraud, and conspiracy to defraud suit. In four points, Sharpe argues the trial court erred in: (1) denying her motion for new trial because she did not obtain notice of the trial setting until after the trial occurred; (2) denying her motion for new trial because she met the *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939), test in that her absence at trial was not intentional or the result of conscious indifference and she set up a meritorious defense; (3) striking her pleadings and entering a default judgment against her on liability because such sanctions were excessive and were not directed against the wrongdoer; and (4) awarding punitive damages because punitive damages may not be awarded for breach of contract, nor may punitive damages be awarded for fraud when actual damages are only awarded for breach of contract. We affirm the judgment.

### II. FACTUAL BACKGROUND

Kilcoyne sued Sharpe and Texas Securities, Inc., for breach of contract and fraud on December 13, 1993. Kilcoyne's suit alleged the existence and breach of a September 19, 1993 written offer made by Sharpe, on behalf of Texas Securities, to Kilcoyne in which Texas Securities agreed to purchase 300,400 shares of stock in CountryGlen PLC from Kilcoyne. Sharpe filed a verified answer on January 7, 1994, claiming she could not be sued in her individual capacity because she was acting on behalf of Texas Securities in her capacity as chief executive officer.

In October 1994, Kilcoyne amended his original petition to add fraud and conspiracy to defraud claims against Sharpe's attorney Hank Vanderkam. Kilcoyne alleged that Vanderkam [1] and Sharpe sought to defraud him and never meant to actually place his shares. Because he was now a party to the suit, Vanderkam filed a motion to withdraw as counsel for both Sharpe and Texas Securities on January 26, 1995. Vanderkam informed Sharpe that month that he might have to withdraw from the case and, Sharpe contends, instructed her not to do anything

---

1. Vanderkam delivered Sharpe's offer to buy Kilcoyne's stock to Kilcoyne's agent in Dublin, Ireland in September of 1993.

because he would "handle things." Sharpe took Vanderkam's advice literally.

Beginning in January 1995, Sharpe refused acceptance of all correspondence from Kilcoyne's counsel and the court, despite not speaking to Vanderkam again after their January conversation. In addition, Sharpe, who lived in Fort Worth, Texas at the time suit was filed, moved to Toronto, Canada in January of 1994 and then to Belfountain, Canada in June of 1995. These moves, and Sharpe's failure to leave a forwarding address, when combined with Sharpe's rejection of case-related mail, made Kilcoyne's and the court's attempts to serve case-related documents on Sharpe almost impossible.

On June 13, 1995, Kilcoyne nonsuited Texas Securities without Sharpe's knowledge or participation, after the corporation filed for bankruptcy. Then on September 21, 1995, the trial court granted Vanderkam's motion to withdraw, leaving Sharpe without counsel and, according to her, without knowledge that she was without counsel. After Sharpe's absence at two deposition settings and a setting on Kilcoyne's second motion for sanctions, the trial court struck Sharpe's pleadings on November 2, 1995 and entered a post-answer default judgment against her on the issue of liability. The court then granted Kilcoyne's motion to sever the suit against Vanderkam and both Kilcoyne's attorney and the trial court sent Sharpe another series of notices about the case, culminating in a trial setting notice declaring that the trial court would hear evidence on damages on May 13, 1996. Sharpe failed to appear on May 13 at which time the trial court entered a final default judgment awarding Kilcoyne $386,329.55 in actual damages and $772,659.10 in punitive damages.

Sharpe contends that she first received notice that the case was proceeding without her on May 18, 1996, when she returned home from Europe to find a notice for the May 13 trial setting in the mail. Receiving the notice, Sharpe contacted attorney Keith Harvey, and he timely filed a motion for new trial, alleging that Sharpe: (1) lacked actual or constructive notice of the May 13 trial setting; and (2) satisfied the *Craddock* prerequisites for a new trial. Kilcoyne's reply to Sharpe's motion detailed his efforts to discover Sharpe's whereabouts and the existence of twelve separate notices sent to Sharpe during the pendency of the suit, all of which were returned marked, "wrong address" or "refused."[2] At the hearing on Sharpe's motion for new trial, Sharpe testified that: (1) she did not receive the multiple correspondences sent to her; (2) Vanderkam had failed to contact her and inform her of his withdrawal or the status of the case; and (3) she was not acting in her individual capacity when dealing with Kilcoyne. The trial court denied Sharpe's motion holding that Sharpe had constructive notice, if not actual notice, of the proceedings and had failed to present a meritorious defense under *Craddock*.

## III. THE LACK OF NOTICE CLAIM

■ Sharpe first contends that she is entitled to a new trial because she lacked actual

---

**2.** Kilcoyne's counsel presented evidence of twelve mailings sent to Sharpe between July 1995 and May 1996. Sharpe sets forth these mailings in her brief:

(1) Notice of deposition duces tecum for Sara Sharpe, mailed July 18, 1995.

(2) Notice of deposition duces tecum for Sara Sharpe, notice of deposition duces tecum for Hank Vanderkam, and notice of address change, mailed on or around October 6, 1995.

(3) Second motion for sanctions, mailed on or around October 20, 1995.

(4) Certificate of last known mailing address, proposed order on motion for sanctions, and proposed default judgment against Sara Sharpe as to liability, mailed on November 15, 1995.

(5) Notice of deposition duces tecum for Hank Vanderkam and response to request for produc-

tion of documents served by Hank Vanderkam, mailed November 27, 1995.

(6) Notice of deposition duces tecum for Hank Vanderkam, mailed on January 26, 1996.

(7) Answer to counterclaim, mailed on March 25, 1996.

(8) Plaintiff's response to motion for leave to file third party claim, mailed on April 5, 1996.

(9) Motion to sever, mailed on or around April 12, 1996.

(10) Notice of deposition of plaintiff Barton Kilcoyne on written questions filed by Kilcoyne, mailed on April 20, 1996.

(11) Order granting severance, mailed on April 30, 1996.

(12) Deposition of plaintiff Barton Kilcoyne on written questions and plaintiff's witness and exhibit list, mailed on or around May 10, 1996.

or constructive notice of the May 13 trial on damages. The trial court found that Sharpe had constructive, if not actual, notice of the May 13 trial setting because she refused numerous, properly addressed mailings that would have provided her with notice of the trial setting. Sharpe contends that only one mailing, a motion to sever she refused April 27, 1996, could have provided her with constructive notice of the trial and that more notice is required. We review a trial court's determination of a motion for new trial under an abuse of discretion standard. *See Cliff v. Huggins,* 724 S.W.2d 778, 778–79 (Tex.1987).

In *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988), the Supreme Court held the absence of actual or constructive notice violates a party's due process rights under the Fourteenth Amendment to the United States Constitution. *See id.* at 84–85, 108 S.Ct. at 899, 99 L.Ed.2d at 81; *Lopez v. Lopez,* 757 S.W.2d 721, 723 (Tex.1988). The *Peralta* Court stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.

*Peralta,* 485 U.S. at 85, 108 S.Ct. at 899, 99 L.Ed.2d at 81.

The Beaumont Court of Appeals discussed *Peralta* and the definition of "constructive notice" in *Gonzales v. Surplus Ins. Services,* 863 S.W.2d 96, 99–100 (Tex.App.—Beaumont 1993, writ denied). In *Gonzales,* Gonzales failed to answer requests for admissions, the requests were deemed admitted, and summary judgment was granted against him. *Id.* at 99–101. Gonzalez filed a motion for new trial alleging lack of service and *Peralta* due process violations. *Id.* at 99–100. The trial court denied the motion after the appellees presented evidence that the requests were sent to Gonzalez by certified mail and were refused for no apparent reason. *Id.* at 101. On appeal, the Beaumont court distinguished *Peralta* as a no-answer default case where lack of service was not contested, stating that "under certain circumstances a par-

ty's actions or non-action can constitute a waiver of procedural due process rights." *Id.* The court then remarked that Gonzalez "knew of the on-going litigation against him" and "was also aware that appellee was pursuing its cause of action with vigor." *Id.* Thus, the court held:

> [W]here it is shown, as here, that a party has fully complied with the notice requirements ... yet fails to establish actual receipt of notice upon opposing party or counsel, such notice shall be sufficient constructive notice where it is shown that the intended recipient engaged in instances of selective acceptance/refusal of certified mail relating to the case.

*Id.* at 102.

The Court further explained their holding:

> The restrictive nature of our holding is not intended as a holding that constructive notice be limited only to those cases where facts show a selective acceptance/refusal of notice. We believe that a determination of constructive notice should be made on a case-by-case basis rather than by statement of a general rule.

*Id.*

■ We find the holding and analysis in *Gonzales* persuasive. First, Sharpe knew she was being sued. Second, Sharpe knew Vanderkam would probably have to withdraw. These facts are undisputed. Third, Sharpe knew Kilcoyne was actively pursuing his claim. Sharpe acknowledges that she refused multiple mailings that pertained to the case. Fourth, Sharpe received constructive notice of the May 13 trial. Sharpe acknowledges that she received and refused Kilcoyne's motion to sever, which contained the trial setting date. Had Sharpe opened her mail, she would have known about the trial. These facts more than satisfy the *Peralta* due process requirements. Sharpe's first point is overruled.

## IV. THE *CRADDOCK* CLAIM

In her second point, Sharpe contends that she satisfied the prerequisites for a new trial as set forth in *Craddock.* In *Craddock,* the Texas Supreme Court held that a trial court's discretion to grant a new trial after

rendering a default judgment must be tested by a guiding rule or principle:

> [I]n any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Craddock,* 133 S.W.2d at 126.

■ The *Craddock* test applies to post-answer default judgments and to defaults resulting from trial court sanctions that strike pleadings. *See Director, State Employees Workers' Compensation Division v. Evans,* 889 S.W.2d 266, 268 (Tex.1994) (holding *Craddock* applies to post-answer default judgments); *Equinox Enters., Inc. v. Associated Media, Inc.,* 730 S.W.2d 872, 874 (Tex. App.—Dallas 1987, no writ) (holding *Craddock* applies to default judgments issued after court strikes pleadings in sanction hearing). As stated above, we review a trial court's determination of a motion for new trial under an abuse of discretion standard. *Cliff,* 724 S.W.2d at 778.

■ A defendant challenging a default under *Craddock* must show that: (1) the failure of the defendant to answer before judgment was not intentional or the result of conscious indifference, but was due to a mistake or an accident; (2) the motion for new trial set up a meritorious defense; and (3) the motion was filed at a time when to grant it would cause no delay or otherwise work an injury to the plaintiff. *See Bank One, Tex. v. Moody,* 830 S.W.2d 81, 82–83 (Tex.1992).

## A. Conscious Indifference Prong

*Craddock* dictates that Sharpe must first show that her failure to appear for the May 13 trial setting was not intentional or the result of conscious indifference, but was due to a mistake or an accident. *Craddock,* 133 S.W.2d at 126. Sharpe contends: (1) she acted in reasonable reliance upon her attorney's advice to refrain from taking action in the case until she heard from him; and (2)

she never received any notice that the case was going forward.

■ Even a slight excuse may justify a new trial. *See Ivy v. Carrell,* 407 S.W.2d 212, 213 (Tex.1966). A defendant can be found negligent and still satisfy the *Craddock* test. *See id.; General Life and Accident Ins. Co. v. Higginbotham,* 817 S.W.2d 830, 832 (Tex.App.—Fort Worth 1991, writ denied). Here, Vanderkam's actions are highly suspect in light of his being an adverse party to the suit. His apparent disregard for the well being of his client, both before and after he formally withdrew, resulted in a windfall for Kilcoyne, who happened to be suing Vanderkam on the same transaction.

■ However, Sharpe's actions cannot be explained or excused. This court has interpreted conscious indifference "to mean a failure to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances." *See Johnson v. Edmonds,* 712 S.W.2d 651, 652–53 (Tex.App.—Fort Worth 1986) (upholding denial of motion for new trial where "appellant neither sought help nor advice nor made inquiry about the import of the 'papers' he had received"). As stated above, Sharpe knew she was being sued, knew Vanderkam would probably have to withdraw, and knew Kilcoyne was actively pursuing his claim. *See Gonzales,* 863 S.W.2d at 101–103 (applying same constructive notice factors to *Craddock* conscious indifference prong). Yet, she did nothing from September 1995 to May 1996, despite being bombarded with multiple mailings by both Kilcoyne's attorney and the court. Sharpe also failed to: (1) leave a forwarding address; (2) contact Vanderkam about the case; or (3) make an inquiry to the court about her case. We find that such acts are sufficient evidence of conscious indifference to support the finding of the trial court. *See id.; Edmonds,* 712 S.W.2d at 652–53.

It is unnecessary for us to consider whether Sharpe met the other *Craddock* requisites because she has not established that her failure to appear was not the result of conscious indifference on her part. We find that the trial court did not abuse its discretion in denying Sharpe's motion for new trial and overrule Sharpe's second point.

## V. THE EXCESSIVE SANCTIONS CLAIM

In her third point, Sharpe contends the trial court erred in striking her pleadings and entering a default judgment on the issue of liability. The legitimate purposes of discovery sanctions are threefold: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992). In *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991), the Texas Supreme Court held there must be a direct relationship between the offensive conduct and the sanctions imposed, and the sanctions must not be excessive. *See id.* at 917.

The standard of review of a trial court's discovery sanctions is whether the court abused its discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In other words, the reviewing court must determine whether the trial court's action was arbitrary or unreasonable. *See id.* at 242. The trial court is given broad discretion in imposing discovery sanctions and in choosing the appropriate sanctions. *See id.* at 241; *Carr v. Harris County*, 745 S.W.2d 531, 532 (Tex.App.—Houston [1st Dist.] 1988, no writ). In determining whether to impose discovery sanctions, the trial court is not limited to considering only the specific violation for which sanctions are finally imposed, but may consider everything that has occurred during the history of the litigation. *See White v. Bath*, 825 S.W.2d 227, 230 (Tex. App.—Houston [14th Dist.] 1992, writ denied), *cert. denied*, 507 U.S. 1039, 113 S.Ct. 1868, 123 L.Ed.2d 488 (1993). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *See Downer*, 701 S.W.2d at 242.

This court has held that, as a general rule, courts must impose lesser sanctions before imposing death penalty sanctions. *See Humphreys v. Meadows*, 938 S.W.2d 750, 752 (Tex.App.—Fort Worth 1996, writ denied) (crafting rule out of language in *Chrysler Corp.* that lesser sanctions must be tested before imposition of death penalty sanctions). However, this case falls into the narrow framework of an exception to the general rule. Here, Kilcoyne moved for sanctions after Sharpe missed the first deposition and his motion was denied. Kilcoyne's second motion came after Sharpe missed another deposition and, through the evidence presented at the hearing, it became evident that Sharpe had left the country and was not going to appear for any case related proceedings. Thus, in this limited factual situation, we find that imposition of lesser sanctions would have been futile. Lesser sanctions would merely have postponed the inevitable as evidenced by Sharpe's complete failure to appear for any subsequent proceedings.

The trial court's own explanation in the record of why it believed death penalty sanctions were justified lends support to our decision. *See Chrysler Corp.*, 841 S.W.2d at 852. The trial court's order states:

> The Court, having reviewed the motion and having considered the evidence and the arguments of counsel, finds and concludes that proper notice of the motion and the hearing on the motion was given to Defendant Sara Sharpe and that the motion is well taken and should be granted. The Court further finds and concludes that based on the conduct of Defendant Sara Sharpe in failing to appear at two scheduled depositions after proper notice was given, the appropriate sanction under TEX.R. CIV. P. 215 in this instance is to strike the pleadings of Defendant Sara Sharpe and to render default judgment. . . .

In conclusion, Sharpe's complete disappearance and failure to acknowledge any court-related proceedings made the striking of her pleadings a viable and appropriate action. Thus, we find the trial court did not abuse its discretion and we overrule Sharpe's third point.

## VI. THE PUNITIVE DAMAGES CLAIM

In her fourth point, Sharpe argues the trial court erred in awarding punitive damages. We note at the onset that Sharpe's point is narrowly framed [3] and relies on case law that was recently disapproved by the Texas Supreme Court. *See Formosa Plastics Corp. v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (1998) (disapproving, among others, *Grace Petroleum Corp. v. Williamson*, 906 S.W.2d 66, 68–69 (Tex.App.—Tyler 1995, no writ) and *Parker v. Parker*, 897 S.W.2d 918, 924 (Tex.App.—Fort Worth 1995, writ denied)). The gist of Sharpe's argument is that: (1) punitive damages may not be awarded for breach of contract [4] and (2) punitive damages should not be awarded in this case because the trial court did not award actual damages for fraud.[5]

*Formosa* involved a breach of contract suit that included a claim for fraudulent inducement of contract. *See id.* at 43. The jury found breach of contract and fraudulent inducement and awarded the plaintiff actual and punitive damages. *Id.* at 44. On appeal, the Supreme Court addressed the issue of whether the plaintiffs raised a viable fraud claim when they "suffered only economic losses related to the performance and subject matter of the parties' contract." *Id.* The court examined the split of authority on the issue and took the position that:

> [T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic

loss related to the subject matter of the contract.

*Id.* at 47.

Thus, *Formosa* dictates that fraud damages are available in a case where actual damages are based on an economic breach of contract loss. We find the rule in *Formosa* controls Sharpe's fourth point.[6] Therefore, we overrule Sharpe's fourth point.

## VI. CONCLUSION

Having found the trial court did not abuse its discretion, we affirm the trial court's judgment.

---

3. Sharpe's fourth point states:

   The trial court erred as a matter of law in awarding punitive damages because punitive damages may not be awarded for breach of contract, nor may punitive damages be awarded for fraud when the only actual damages are awarded for breach of contract.

4. *See Amoco Production Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex.1981). Punitive damages are recoverable in tort actions but the mere joinder of a claim in contract with a claim in tort does not alter the general rule: breach of contract cannot support the recovery of exemplary damages. *See Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 745 (Tex.1986).

5. To support an award of exemplary damages, the plaintiff must prove a "distinct" tortious injury with actual damages arising from that injury. *See Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986); *City Products Corp. v. Berman*, 610 S.W.2d 446, 450 (Tex.1980) (stating "[w]hen a distinct, willful tort is alleged and proved in connection with a suit upon a contract, one may recover punitive damages, but even in that instance the complainant must prove that he suffered some actual damages.").

6. In *Formosa*, the court continued with a review of the legal sufficiency of the fraud damages. However, appellant does not raise a legal sufficiency point in its brief.