Advanced Aesthetics, Inc. V. Creative Beauty Innovations, Inc.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-078-CV

ADVANCED AESTHETICS, INC. APPELLANT

V.

CREATIVE BEAUTY APPELLEE

INNOVATIONS, INC.

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Advanced Aesthetics, Inc. (Advanced) appeals from the trial court’s denial of a motion to set aside a default judgment entered in favor of Appellee Creative Beauty Innovations, Inc. (CBI).  We affirm.

BACKGROUND

On September 16, 2003, the parties entered into a Settlement Agreement that resolved all claims between them in a lawsuit pending in a United States District Court in Utah.  Under the Settlement Agreement, Advanced agreed to pay CBI six equal installments of $10,416.67 each, with the first payment becoming due immediately upon execution of the Settlement Agreement, and the remaining five payments being due on the first day of each month for five consecutive months beginning October 1, 2003.  The Settlement Agreement provided that if any payment was not made when due, CBI could give written notice of such default to Advanced and its counsel, and if such default was not cured within ten days CBI could sue to enforce the Settlement Agreement in the federal or state courts of the State of Texas, and that Texas law shall govern such proceedings.  Upon execution of the Settlement Agreement, the United States District Court dismissed the Utah litigation.

Communicating through their counsel,
(footnote: 2) the parties almost immediately disagreed about the permissible form of payment for the installment payments.  Advanced wanted to provide CBI with a written credit card authorization whereby CBI would debit Advanced’s American Express charge account when each payment was due.  Because CBI did not want to absorb the fees charged by American Express, it refused this manner of payment.

On October 22, 2003, CBI filed its original petition against Advanced in district court in Tarrant County, Texas alleging breach of contract stemming from Advanced’s failure to make the initial and first monthly installment payments.  Two days later, CBI filed an amended petition adding a claim for fraudulent inducement in the negotiation and execution of the Settlement Agreement.  The amended petition sought, among other things, rescission of the Settlement Agreement and unspecified damages for CBI’s losses arising from the claims asserted in the Utah litigation.

There was subsequent communication between the parties’ attorneys  that will be discussed later in this opinion.  Because CBI believed that Advanced’s attorney refused to accept service of process on behalf of Advanced, CBI began the process of completing service through the Texas Secretary of State who mailed the citation and amended petition to Advanced’s President, Christine Heathman.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 §§  17.044(b); 17.045 (Vernon 1997 & Supp. 2004-05).  After service of process was completed on November 17, 2003, and the appropriate time had expired for Advanced to file an answer, the trial court signed a default judgment on December 19, 2003 awarding damages to CBI as requested in its amended petition.

Advanced timely filed a motion to set aside the default judgment.  The trial court held a hearing on the motion.  No live testimony was presented at the hearing, which was not transcribed by a court reporter.
(footnote: 3)  The trial court’s order denying Advanced’s motion to set aside the default judgment contained general language denying the motion but did not include any specific explanation for the denial.  The trial court did not make any findings of fact or conclusions of law.

STANDARD OF REVIEW

A trial court’s decision to deny a motion to set aside a default judgment is reviewable for abuse of discretion.  
Old Republic Ins. Co. v. Scott
, 873 S.W.2d 381, 382 (Tex. 1994).  In making this determination, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).

Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id
.  An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.  
Davis v. Huey
, 571 S.W.2d 859, 862 (Tex. 1978); 
see also Goode v. Shoukfeh
, 943 S.W.2d 441, 446 (Tex. 1997).  Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court’s decision.  
Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 211 (Tex. 2002).

Because the trial court did not file findings of fact and conclusions of law, the denial of Advanced’s motion to set aside the default judgment must be upheld on any legal theory that finds support in the evidence.  
See Strackbein v. Prewitt
, 671 S.W.2d 37, 38 (Tex. 1984).

CRADDOCK V. SUNSHINE BUS LINES, INC.
(footnote: 4)
 In its sole issue on appeal, Advanced contends the trial court abused its discretion in denying its motion to set aside the default judgment because Advanced met the test of 
Craddock v. Sunshine Bus Lines, Inc.
 by demonstrating that: 1) its failure to file an answer was a mistake or accident, and was not intentional or a result of conscious indifference; 2) the motion set up a meritorious defense; and 3) the motion was filed at a time when its granting would occasion no delay or otherwise injure CBI.  
See Bank One, Tx., N.A. v. Moody
, 830 S.W.2d 81, 82 (Tex. 1992); 
Craddock
 133 S.W.2d at 126.

Mistake or accident vs. intentional or conscious indifference

In order to meet the first prong of the 
Craddock
 test, Advanced had to establish that its failure to file an answer was not intentional or the result of conscious indifference, but was an accident or mistake.  
See
 
Craddock
, 133 S.W.2d at 126.  When applying the 
Craddock
 test, the trial court looks to the knowledge and acts of the defendant as contained in the record before the court.  
Holt Atherton Indus., Inc. v. Heine
, 835 S.W.2d 80, 82 (Tex. 1992).  When a defendant relies on his agent to file an answer, he must demonstrate that both he and his agent were free of conscious indifference.  
Id.
 at 83.  “Conscious indifference” means “a failure to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances."  
Sharpe v. Kilcoyne
, 962 S.W.2d 697, 701 (Tex. App.—Fort Worth 1998, no pet.).

Therefore, the issue before the trial court was whether Advanced established that neither Advanced nor its counsel exhibited intentional disregard or conscious indifference in not timely filing an answer after being served with CBI’s first amended petition by the Texas Secretary of State and after receiving written and verbal notification of this service from CBI’s counsel.  Advanced contends that its counsel fully intended to file a timely answer and failed to do so only because neither he nor his client had actual notice that service had been completed and that an answer was due.

Factual Background

By letter dated October 27, 2003, CBI’s counsel notified Advanced’s counsel that CBI had sued Advanced, and attached a file-marked copy of the petition.  CBI’s counsel asked whether Advanced’s counsel would accept service on behalf of Advanced; shortly thereafter he received a voice message from Advanced’s counsel advising that he would not agree to accept service.  Accordingly, CBI’s counsel followed the procedures for having Advanced served by the Texas Secretary of State.

Christine Heathman, President of Advanced, stated that shortly after November 14 she learned from her counsel that the instant lawsuit had been filed.  She and her assistant, Monica Villar, an officer of Advanced, “had contact with counsel throughout November and early December addressing these issues [form of payment under the Utah settlement agreement and a sales dispute].”

On November 17, Villar signed for a certified letter, return receipt requested, addressed to Heathman from the “Secretary of State Citations Unit” in Austin, Texas; the letter included citation and CBI’s amended petition. Heathman’s affidavit states that shortly before Thanksgiving (November 27)
(footnote: 5) she was out of the office for several days and that between December 1 and 10 she was in Mexico.  During her absence, mail specifically addressed to her at Advanced was received and set aside but in most cases was not opened.  The letter from the Texas Secretary of State Citations Unit remained on Heathman’s desk until she read it on December 11 or 12 upon her return from a trip to Mexico.  Heathman stated that when she read the documents she did not understand that the letter constituted service of process; she believed the documents were merely copies of items that Advanced’s counsel already had in his possession.

CBI’s counsel testified via affidavit that after Advanced had been served by the Texas Secretary of State, Advanced’s counsel left a voice message saying he was now willing to accept service on behalf of Advanced.  CBI’s counsel immediately responded by sending a letter via facsimile to Advanced’s counsel on November 25 reciting that because Advanced’s counsel would not accept service, CBI had to incur the expense of having Advanced served, and “It is my understanding that Advanced has been properly served with process in the above-referenced matter.  I am, however, attaching the amended petition that was served on your client.”

Advanced’s counsel immediately contacted his client to determine if it had in fact been served.  Villar informed him that Advanced had not been served.
(footnote: 6)  On December 11, Advanced’s counsel called CBI’s counsel to confirm whether service had been completed and to inquire as to the date Advanced’s answer would be due.  On December 15, Advanced’s counsel received a voice message from CBI’s counsel stating that Advanced’s answer had been due the prior Monday, December 8, and asking him to let CBI’s counsel know if Advanced “wanted to file something.”  On December 18, Advanced’s counsel contacted Texas counsel to represent Advanced in this lawsuit.
(footnote: 7)  Advanced’s counsel stated that “Throughout this period, I communicated with [CBI’s counsel] several times, primarily by exchanging voice-mail messages.  I consistently communicated to him that Advanced intended to respond to the petition.”

CBI’s counsel testified in his affidavit that when he heard nothing from Advanced’s counsel after leaving him the voice message on December 15, and because no answer had been filed nor was there any indication that Advanced would be filing an answer, he filed a motion for default judgment on December 18.  CBI’s counsel stated he was never told that Advanced intended to file an answer to this lawsuit.

On December 19, the trial court signed a default judgment in favor of CBI.  Advanced’s answer was mailed to the trial court clerk by Texas counsel on December 19 and was filed on December 22.

Discussion

In support of its contention that it met the first prong of 
Craddock
, Advanced relies primarily upon the Texas Supreme Court case of 
Estate of Pollack v. McMurrey
, 858 S.W.2d 388 (Tex. 1993), which Advanced argues presents facts nearly identical to those in the case at bar.

In 
Pollack
, the defendant died after filing an answer to the suit.  Plaintiff’s counsel informed the estate’s counsel that the estate was being made a party to the suit; the Texas Secretary of State subsequently attempted service upon the two executors by certified mail, return receipt requested. 
 See
 
Tex. Civ. Prac. & Rem. Code Ann.
 §§ 17.044-.045.  The citation to one executor was returned unclaimed, and the citation to the other executor was signed for by an unidentified person at the executor’s home.  
Pollack
, 858 S.W.2d at 390.  When the estate failed to answer, the trial court signed a default judgment.  In support of its motion for new trial, the estate filed affidavits from the executors saying that each was “totally unaware” of the litigation until after entry of the default judgment.  
Id.

The facts of 
Pollack
 differ from those in the case at bar.  In 
Pollack
, no one knew who signed for one executor’s citation and the other executor had never been served; in our case it is undisputed that Monica Villar, an officer of Advanced, signed for the citation that was addressed to Christine Heathman as President of Advanced.  The executors in 
Pollack
 had no knowledge of the pendency of the litigation, whereas Heathman testified that “on a date shortly after Nov. 14" she had knowledge the instant lawsuit had been filed against Advanced.  Further, Heathman testified that on an unstated date in December, after December 11 or 12 but before the default judgment was signed, she had knowledge through her counsel that CBI contended that Advanced had been served and that an answer was due.  Additionally, in 
Pollack
, there was no evidence that anyone in the law firm representing the estate was aware that the executors had been served.  By contrast, Advanced’s counsel was expressly informed by CBI’s counsel in writing on November 25 that it was his understanding that Advanced had been properly served with process, and by attaching CBI’s amended petition “that was served on your client.”  CBI’s counsel again informed Advanced’s counsel on December 15 that the answer date had passed and requested Advanced’s counsel let CBI’s counsel know if Advanced intended to file something in response.  Advanced’s counsel did not communicate with CBI’s counsel before the default judgment was signed on December 19.

In 
Pollack
, the supreme court held the trial court abused its discretion in refusing to set aside the default judgment “without a proper resolution of a factual dispute regarding the Estate’s failure to answer.”  
Id.
 at 389.  The case was reversed and remanded to the trial court with instructions to conduct an evidentiary hearing to determine controverted material facts relating to the Estate’s failure to answer.  
Id.

This differs from the instant case where the trial court held a hearing on Advanced’s motion to set aside the default judgment.  Unlike the situation in  
Pollack
, our trial court did not deny Advanced’s motion without permitting Advanced an opportunity to further develop facts relevant to the motion to set aside the default judgment.  Instead of presenting live testimony at the hearing, both parties chose to rely upon the affidavits submitted in support of the motion and the response, as was certainly their prerogative.  Because of the significant differences in the facts between 
Pollack
 and the instant case, we do not find 
Pollack
 lends support to Advanced’s argument that it proved the first prong of 
Craddock
.

Having thoroughly reviewed the affidavits that were before the trial court at the hearing on Advanced’s motion to set aside the default judgment, we hold that a person of reasonable sensibilities under the same circumstances would have taken action to file an answer to CBI’s amended petition prior to the date the trial court signed the default judgment.  
See Sharpe, 
962 S.W.2d at 701.  Therefore, we conclude that Advanced did not meet the first prong of the 
Craddock
 test by establishing that its failure to timely file an answer was an accident or mistake and not intentional or the result of conscious indifference.   
CONCLUSION

Because we have held that Advanced did not meet the first prong of 
Craddock
, we need not address whether Advanced presented a meritorious defense or established that a new trial would not delay or otherwise injure CBI.  We hold the trial court did not abuse its discretion in denying Advanced’s motion to set aside the default judgment.  Accordingly, we overrule Advanced’s sole issue and affirm the judgment of the trial court.

PER CURIAM

PANEL A:  HOLMAN, J.; CAYCE, C.J.; and WALKER, J.

DELIVERED:  February 10, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Advanced’s counsel is a Utah attorney.  After the instant suit was filed, Advanced engaged Texas co-counsel.  However, all references in this opinion to “Advanced’s counsel” refer to the Utah attorney, unless otherwise indicated.  

3:
Advanced submitted the affidavits of its Utah counsel, its Texas counsel, and Christine Heathman.  CBI submitted the affidavit of its counsel.

4:
Craddock v. Sunshine Bus Lines, Inc.
, 134 Tex 388, 133 S.W.2d 124 (1939)

5:
See
 “Calendar for the year 2003 (United States),” <http://timeanddate.com/calendar/index.html?year=2003&country=1>.

6:
In its appellate brief, Advanced asserts that its counsel “called Advanced almost daily once he was informed by CBI that Advanced would be served.  Despite his calls, Advanced continued to insist that it had not been served.”  Because this information is not contained in the affidavit filed by Advanced’s counsel and therefore was not before the trial court, it is not a part of the appellate record and will not be considered on appeal.

7:
December 15, 2003 was on Monday; December 18, 2003 was on Thursday.  
See
 
id.