

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00241-CV

$8780.00 IN UNITED STATES                                    APPELLANT
CURRENCY

V.

THE STATE OF TEXAS                                            APPELLEE

----------

### FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

----------

### MEMORANDUM OPINION[1]

----------

In two issues, Anthony Jerome Snell, who claims to be entitled to the $8,780 at issue in this appeal, contends that the trial court erred by granting and refusing to set aside a default judgment that forfeited the money to appellee, the State of Texas. We reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

**Background Facts**

According to an affidavit from Texas Department of Public Safety (DPS) Sergeant John Waight, on August 9, 2008, DPS Trooper William Smith stopped Snell for speeding and obtained consent to search his truck tractor and refrigerated semi trailer. Upon opening the semi trailer, Trooper Smith smelled marijuana and found six boxes full of it (weighing approximately 271 pounds) and $8,780, which was wrapped in nine bundles. Snell was the owner of the truck tractor and semi trailer. He told Sergeant Waight, who went to the traffic stop, that he had picked up the marijuana in Arizona while travelling from California to Mississippi. He said that he had transported drugs before this incident. He claimed, however, that he received the money by cashing a check. Sergeant Waight discovered that Snell was wanted by Kansas law enforcement authorities for possessing over a hundred pounds of marijuana.

On August 25, 2008, under chapter 59 of the code of criminal procedure, the State filed a notice of seizure and intended forfeiture of the $8,780, contending that Snell used or intended to use it in the commission of a felony under chapter 481 of the health and safety code or that it was a proceed or acquired with a proceed from such a felony.[2] The State asked that the money be forfeited as contraband.

---

[2]*See* Tex. Code Crim. Proc. Ann. arts. 59.01(2)(B)–(D), .02(a) (Vernon Supp. 2010).

Sometime after his arrest, Snell bonded out of jail. The State attempted to serve him with citation by certified mail[3] in August and November 2008, but he did not sign for the mail on either occasion.[4] The State personally served Snell with citation on March 8, 2010, when he was in custody. Snell did not file an answer, so on April 7, 2010, the State filed a motion for default judgment.[5] The next day, the trial court signed the default judgment, therefore forfeiting the money to the State.

On May 7, 2010, Snell filed a motion to set aside the default judgment, arguing that his failure to answer the suit was because of an accident or mistake rather than conscious indifference, that he had a meritorious defense, and that a new trial would not prejudice the State. After Snell testified at an evidentiary hearing, the trial court denied his motion. He filed notice of this appeal.

---

[3]*See id.* art. 59.04(b), (i) (Vernon Supp. 2010); Tex. R. Civ. P. 106(a)(2).

[4]The State sent the certified mail to California. The record indicates that the first attempt at service through certified mail was returned to the sender and that the second attempt was delivered to someone other than Snell.

[5]*See* Tex. Code Crim. Proc. Ann. art. 59.05(a) (Vernon 2006) (stating that in a chapter 59 forfeiture proceeding, all "parties must comply with the rules of pleading as required in civil suits"); Tex. R. Civ. P. 99(b), 239; *see also One Thousand Three Hundred Fifty Four U.S. Dollars v. State*, No. 11-06-00310-CV, 2008 WL 802989, at *1–2 (Tex. App.—Eastland Mar. 27, 2008, no pet.) (mem. op.) (affirming a no-answer default judgment issued in a chapter 59 forfeiture proceeding).

**Refusal to Set Aside the Default Judgment**

In his second issue, Snell contends that the trial court erred by denying his motion to set aside the default judgment and refusing to grant a new trial. "The law prefers that cases be disposed on their merits wherever possible, rather than by default." *Gen. Elec. Capital Auto Fin. Leasing Servs., Inc. v. Stanfield*, 71 S.W.3d 351, 356 (Tex. App.—Tyler 2001, pet. denied); *see Hock v. Salaices*, 982 S.W.2d 591, 593 (Tex. App.—San Antonio 1998, no pet.) ("It is a basic tenet of jurisprudence that the law abhors a default. . . . Equity is rarely served by a default.") (citations omitted); *see also Titan Indem. Co. v. Old S. Ins. Grp., Inc.*, 221 S.W.3d 703, 708 (Tex. App.—San Antonio 2006, no pet.) ("The historical trend in default judgment cases is toward the liberal grant of new trials.").

As we recently explained,

> A default judgment should be set aside and a new trial granted when the defaulting party establishes that (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009); *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). We review a trial court's refusal to grant a motion for new trial for abuse of discretion. *Dolgencorp*, 288 S.W.3d at 926; *Cliff v. Huggins*, 724 S.W.2d 778, 778 (Tex. 1987). When a defaulting party moving for new trial meets all three elements of the *Craddock* test, then a trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp*, 288 S.W.3d at 926; *Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994).

*Hampton-Vaughan Funeral Home v. Briscoe*, 327 S.W.3d 743, 746–47 (Tex. App.—Fort Worth 2010, no pet.). To determine whether a trial court abused its

4

discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* at 242.

The State concedes that Snell has set up a meritorious defense;[6] therefore, we must determine whether the trial court erred by implicitly finding that his failure to file an answer was intentional or the result of conscious indifference or that granting a new trial would cause undue delay or injure the State.[7] *See Briscoe*, 327 S.W.3d at 746–47.

**Snell did not intentionally refuse to file an answer and was not consciously indifferent toward filing one**

"Intentional or conscious indifference for purposes of *Craddock* means 'that the defendant knew it was sued but did not care.'" *Id.* at 747–48 (quoting *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex.

---

[6]Snell explained that he drove a truck to take loads from California to Mississippi for a freight brokerage company. The brokerage company paid him with checks, which he cashed. He carried the cash in his truck, which he slept in at night, to pay expenses. According to Snell, in the month before the State seized the $8,780, he cashed between ten and twelve thousand dollars in checks, and the $8,780 came from cashing the checks.

[7]The trial court did not specify its reason for denying Snell's motion.

5

2006)).  A defendant's mere negligence does not show conscious indifference. *Id.* at 748; *see Levine v. Shackelford, Melton & McKinley, L.L.P.*, 248 S.W.3d 166, 169 (Tex. 2008) ("[T]he complete definition of conscious indifference amounts to more than mere negligence.").  A defendant must offer some excuse for the failure to answer, which need not necessarily be a good excuse.  *Briscoe*, 327 S.W.3d at 748; *see Sharpe v. Kilcoyne*, 962 S.W.2d 697, 701 (Tex. App.—Fort Worth 1998, no pet.) ("Even a slight excuse may justify a new trial.").  In other words, a "failure to appear is not intentional or due to conscious indifference . . . merely because it is deliberate; it must also be without adequate justification.  Proof of such justification—accident, mistake or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied."  *Smith v. Babcock & Wilcox Constr. Co.,* 913 S.W.2d 467, 468 (Tex. 1995).  The party seeking a new trial has the burden to prove the lack of intent or conscious indifference.  *Liberty Mut. Fire Ins. Co. v. Ybarra*, 751 S.W.2d 615, 617–18 (Tex. App.—El Paso 1988, no writ).

Snell was the sole witness at the trial court's hearing on his motion to set aside the default judgment.[8]  By the time of the hearing, he had pled guilty to possessing the marijuana that the police found.  He said the State served him with citation on March 8, 2010, while he was in a Parker County jail, but he was

---

[8]"The defendant's burden as to the first *Craddock* element has been satisfied when the factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff." *In re R.R.,* 209 S.W.3d 112, 115 (Tex. 2006).

"real sick"[9] so he did not read the paperwork "for a while."[10]  In response to a request for assistance regarding the citation, a jail employee told him that he would need to "wait until the Court appointed [him] a court-appointed attorney."

Snell eventually read the citation and all the documents attached to it.  He recognized that the State was trying to keep the money it had seized, and he knew from the citation that a default judgment could be entered if he did not file an answer.  Although he knew that he needed to file an answer, he did not know what an answer was or how to file one, nor did he know what a default judgment was.[11]  He did not communicate with the trial court or the court's clerk about how to file an answer.  Other than requesting assistance from the jail employee, he did not do anything else to try to understand the paperwork that he had been served with.

Snell did not have counsel, so he applied for a court-appointed attorney but received one only on his criminal case on approximately March 22, 2010.  His appointed criminal attorney advised him that the "court date had passed" on the

---

[9]Snell testified that he was in a hospital for heart problems shortly before being returned to Parker County custody.

[10]Snell has remained in Parker County custody since that time (he did not post a bond).  He testified that he could not call an attorney's office from jail to discuss the forfeiture case.

[11]Snell graduated high school and attended some college, but he did not have legal training or experience in other civil lawsuits.  He testified that he did not know that an answer could be filed by sending a letter to the court.

forfeiture case and that he "needed to file an answer right away."[12]  Snell called his girlfriend and his mother in California, who hired counsel for him the week after he had talked to his criminal attorney.

These facts show that Snell had some fault for not timely filing an answer. We cannot conclude, however, that they show intent not to file an answer or a conscious indifference toward filing one.  Snell inquired about filing an answer and received misleading advice from jail personnel.  This shows that he cared about filing an answer and serves as at least a "slight" excuse for not filing it. *See Briscoe*, 327 S.W.3d at 747–48; *Sharpe*, 962 S.W.2d at 701.  Snell later asked his criminal attorney about the forfeiture case.  He called his girlfriend and mother to secure an attorney soon after his criminal attorney told him to file an answer "right away."  These facts show Snell's desire to contest the forfeiture and some actions, albeit ineffective ones, to do so.  *Cf. R.R.*, 209 S.W.3d at 115 ("Not understanding a citation *and then doing nothing following service* does not constitute a mistake of law that is sufficient to meet the *Craddock* requirements.") (emphasis added).

The State argues that the facts of this case are similar to facts from another case in which we held that the trial court did not err by finding that the failure to file an answer was the result of conscious indifference.  *See Butler v.*

---

[12]The record does not disclose the exact date of the conversation between Snell and his criminal attorney about the forfeiture case, but it indicates that it was after the "deadline had passed."

*Dal Tex Mach. & Tool Co.*, 627 S.W.2d 258, 260 (Tex. App.—Fort Worth 1982, no writ). In *Butler*, Butler testified that he read the citation but did not understand it and that he believed that he would be notified later of a court date. *Id.* After reading the citation, Butler discussed it with a constable, who advised him to get an attorney. *Id.* Then, Butler "put the papers on his desk and did nothing further until he received notice of the default." *Id.* Unlike Butler, Snell took actions in a failed attempt to contest the lawsuit between reading the citation and receiving the default judgment. As Snell argues, this is not a case in which he sat "idly by and did nothing."

Thus, we hold that Snell's testimony establishes that his failure to answer the State's forfeiture case was not intentional or consciously indifferent but was, at most, negligent. *See Briscoe*, 327 S.W.3d at 747–48. We conclude that Snell satisfied the first part of the *Craddock* test to obtain a new trial. *See Craddock*, 134 Tex. at 393, 133 S.W.2d at 126.

**There is no evidence of undue delay or injury to the State**

"Once a defendant has alleged that granting a new trial will not injure the plaintiff, the *burden of going forward with proof of injury* shifts to the plaintiff. . . . The goal to be achieved is to not unduly delay or injure the plaintiff by granting the motion." *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 270 (Tex. 1994) (emphasis added); *see Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 393 (Tex. 1993) ("The Estate's motion for new trial represented that granting the motion would not cause delay or prejudice McMurrey.

9

This representation shifted the burden to McMurrey to prove injury."); *Briscoe*, 327 S.W.3d at 749. Snell alleged in his motion to set aside the default judgment that a new trial would "neither occasion delay nor prejudice [the State] because all of the witnesses are still available and [the State] will not be prejudiced in presenting the merits of [its] case." The State did not present evidence to show undue delay or injury; rather, the State argues in its brief that "[i]n these tough economic times, surely the [$8,780] could and would be useful for necessities for the District Attorney's Office." We conclude that this conclusory statement does not satisfy the State's burden to prove injury. *See Evans*, 889 S.W.2d at 270.

Furthermore, Snell said that he was willing to pay the State's expenses incurred in obtaining the default judgment if the trial court set it aside. The willingness of a party to pay the expenses of obtaining the default judgment is an important factor under the *Craddock* test. *See id.* at 270 n.3.

**The trial court abused its discretion**

For these reasons, we conclude that Snell satisfied each of the elements to obtain a new trial under *Craddock*, and we hold that the trial court abused its discretion by denying his motion to set aside the default judgment. *See Dolgencorp*, 288 S.W.3d at 926. We sustain Snell's second issue.[13]

---

[13]Because sustaining Snell's second issue results in the relief he has prayed for (remand to the trial court), we will not address his first issue, which concerns the State's alleged lack of diligence in serving process upon him. *See* Tex. R. App. P. 47.1; *Briscoe*, 327 S.W.3d at 750 n.4.

10

## Conclusion

Having sustained Snell's second issue, we reverse the default judgment for the State and remand the case for further proceedings.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  March 31, 2011