02-10-241-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00241-CV

 

 


 
 
 $8780.00 in United States Currency
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM THE 43rd
District Court OF Parker COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

         
In two issues, Anthony Jerome Snell, who claims to be entitled to the $8,780 at
issue in this appeal, contends that the trial court erred by granting and
refusing to set aside a default judgment that forfeited the money to appellee,
the State of Texas.  We reverse and remand.

Background
Facts

         
According to an affidavit from Texas Department of Public Safety (DPS) Sergeant
John Waight, on August 9, 2008, DPS Trooper William Smith stopped Snell for
speeding and obtained consent to search his truck tractor and refrigerated semi
trailer.  Upon opening the semi trailer, Trooper Smith smelled marijuana
and found six boxes full of it (weighing approximately 271 pounds) and $8,780,
which was wrapped in nine bundles.  Snell was the owner of the truck
tractor and semi trailer.  He told Sergeant Waight, who went to the
traffic stop, that he had picked up the marijuana in Arizona while travelling
from California to Mississippi.  He said that he had transported drugs
before this incident.  He claimed, however, that he received the
money by cashing a check.  Sergeant Waight discovered that Snell was
wanted by Kansas law enforcement authorities for possessing over a hundred
pounds of marijuana.

         
On August 25, 2008, under chapter 59 of the code of criminal procedure, the
State filed a notice of seizure and intended forfeiture of the $8,780,
contending that Snell used or intended to use it in the commission of a felony
under chapter 481 of the health and safety code or that it was a proceed or
acquired with a proceed from such a felony.[2] 
The State asked that the money be forfeited as contraband.

         
Sometime after his arrest, Snell bonded out of jail.  The State attempted
to serve him with citation by certified mail[3] in
August and November 2008, but he did not sign for the mail on either occasion.[4] 
The State personally served Snell with citation on March 8, 2010, when he was
in custody.  Snell did not file an answer, so on April 7, 2010, the State
filed a motion for default judgment.[5]  The next day,
the trial court signed the default judgment, therefore forfeiting the money to
the State.

         
On May 7, 2010, Snell filed a motion to set aside the default judgment, arguing
that his failure to answer the suit was because of an accident or mistake
rather than conscious indifference, that he had a meritorious defense, and that
a new trial would not prejudice the State.  After Snell testified at an
evidentiary hearing, the trial court denied his motion.  He filed notice
of this appeal.

Refusal
to Set Aside the Default Judgment

         
In his second issue, Snell contends that the trial court erred by denying his
motion to set aside the default judgment and refusing to grant a new
trial.  “The law prefers that cases be disposed on their merits wherever
possible, rather than by default.”  Gen. Elec. Capital Auto Fin.
Leasing Servs., Inc. v. Stanfield, 71 S.W.3d 351, 356 (Tex. App.—Tyler
2001, pet. denied); see Hock v. Salaices, 982 S.W.2d 591, 593 (Tex.
App.—San Antonio 1998, no pet.) (“It is a basic tenet of jurisprudence that the
law abhors a default. . . .  Equity is rarely served by a default.”)
(citations omitted); see also Titan Indem. Co. v.
Old S. Ins. Grp., Inc., 221 S.W.3d 703, 708 (Tex. App.—San
Antonio 2006, no pet.) (“The historical trend in default judgment cases is
toward the liberal grant of new trials.”).

         
As we recently explained,

         
A default judgment should be set aside and a new trial granted when the
defaulting party establishes that (1) the failure to appear was not intentional
or the result of conscious indifference, but was the result of an accident or
mistake, (2) the motion for new trial sets up a meritorious defense, and (3)
granting the motion will occasion no delay or otherwise injure the plaintiff.
 Dolgencorp of Tex., Inc. v. Lerma, 288 S.W.3d 922, 925 (Tex.
2009); Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d
124, 126 (1939).  We review a trial court’s refusal to grant a motion
for new trial for abuse of discretion.  Dolgencorp, 288 S.W.3d at
926; Cliff v. Huggins, 724 S.W.2d 778, 778 (Tex. 1987).  When a
defaulting party moving for new trial meets all three elements of the Craddock
test, then a trial court abuses its discretion if it fails to grant a new
trial.  Dolgencorp, 288 S.W.3d at 926; Old Republic Ins. Co. v.
Scott, 873 S.W.2d 381, 382 (Tex. 1994).

Hampton-Vaughan
Funeral Home v. Briscoe, 327 S.W.3d 743, 746–47 (Tex. App.—Fort
Worth 2010, no pet.).  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, whether the act was arbitrary
or unreasonable.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 241–42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).
 Merely because a trial court may decide a matter within its discretion in
a different manner than an appellate court would in a similar circumstance does
not demonstrate that an abuse of discretion has occurred.  Id. at
242.

         
The State concedes that Snell has set up a meritorious defense;[6]
therefore, we must determine whether the trial court erred by implicitly finding
that his failure to file an answer was intentional or the result of conscious
indifference or that granting a new trial would cause undue delay or injure the
State.[7]  See Briscoe, 327
S.W.3d at 746–47.

Snell did not intentionally refuse to file an
answer and was not consciously indifferent toward filing one

 

         
“Intentional or conscious indifference for purposes of Craddock means
‘that the defendant knew it was sued but did not care.’”  Id. at
747–48 (quoting Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.,
186 S.W.3d 571, 576 (Tex. 2006)).  A defendant’s mere negligence does not
show conscious indifference. Id. at 748; see Levine v. Shackelford,
Melton & McKinley, L.L.P., 248 S.W.3d 166, 169 (Tex. 2008) (“[T]he
complete definition of conscious indifference amounts to more than mere
negligence.”).  A defendant must offer some excuse for the failure to
answer, which need not necessarily be a good excuse.  Briscoe, 327
S.W.3d at 748; see Sharpe v. Kilcoyne, 962 S.W.2d 697, 701 (Tex.
App.—Fort Worth 1998, no pet.) (“Even a slight excuse may justify a new
trial.”).  In other words, a “failure to appear is not intentional or due
to conscious indifference . . . merely because it is deliberate; it must also
be without adequate justification.  Proof of such justification—accident,
mistake or other reasonable explanation—negates the intent or conscious
indifference for which reinstatement can be denied.”  Smith v. Babcock
& Wilcox Constr. Co., 913 S.W.2d 467, 468 (Tex. 1995).  The party
seeking a new trial has the burden to prove the lack of intent or conscious
indifference.  Liberty Mut. Fire Ins. Co. v. Ybarra, 751 S.W.2d
615, 617–18 (Tex. App.—El Paso 1988, no writ).

         
Snell was the sole witness at the trial court’s hearing on his motion to set
aside the default judgment.[8]  By the time of the hearing, he
had pled guilty to possessing the marijuana that the police found.  He
said the State served him with citation on March 8, 2010, while he was in a
Parker County jail, but he was “real sick”[9] so he
did not read the paperwork “for a while.”[10] 
In response to a request for assistance regarding the citation, a jail employee
told him that he would need to “wait until the Court appointed [him] a
court-appointed attorney.”

         
Snell eventually read the citation and all the documents attached to it. 
He recognized that the State was trying to keep the money it had seized, and he
knew from the citation that a default judgment could be entered if he did not
file an answer.  Although he knew that he needed to file an answer, he did
not know what an answer was or how to file one, nor did he know what a default
judgment was.[11]  He did not communicate with
the trial court or the court’s clerk about how to file an answer.  Other
than requesting assistance from the jail employee, he did not do anything else
to try to understand the paperwork that he had been served with.

         
Snell did not have counsel, so he applied for a court-appointed attorney but
received one only on his criminal case on approximately March 22, 2010.
 His appointed criminal attorney advised him that the “court date had
passed” on the forfeiture case and that he “needed to file an answer right
away.”[12]  Snell called his girlfriend
and his mother in California, who hired counsel for him the week after he had
talked to his criminal attorney.

         
These facts show that Snell had some fault for not timely filing an
answer.  We cannot conclude, however, that they show intent not to file an
answer or a conscious indifference toward filing one.  Snell inquired
about filing an answer and received misleading advice from jail
personnel.  This shows that he cared about filing an answer and serves as
at least a “slight” excuse for not filing it.  See Briscoe, 327
S.W.3d at 747–48; Sharpe, 962 S.W.2d at 701.  Snell later asked his
criminal attorney about the forfeiture case.  He called his girlfriend and
mother to secure an attorney soon after his criminal attorney told him to file
an answer “right away.”  These facts show Snell’s desire to contest the
forfeiture and some actions, albeit ineffective ones, to do so.  Cf.
R.R., 209 S.W.3d at 115 (“Not understanding a citation and then doing
nothing following service does not constitute a mistake of law that is
sufficient to meet the Craddock requirements.”) (emphasis added).

         
The State argues that the facts of this case are similar to facts from another
case in which we held that the trial court did not err by finding that the
failure to file an answer was the result of conscious indifference.  See
Butler v. Dal Tex Mach. & Tool Co., 627 S.W.2d 258, 260 (Tex. App.—Fort
Worth 1982, no writ).  In Butler, Butler testified that he read the
citation but did not understand it and that he believed that he would be
notified later of a court date.  Id.  After reading the
citation, Butler discussed it with a constable, who advised him to get an
attorney.  Id.  Then, Butler “put the papers on his desk and
did nothing further until he received notice of the default.”  Id. 
Unlike Butler, Snell took actions in a failed attempt to contest the lawsuit
between reading the citation and receiving the default judgment.  As Snell
argues, this is not a case in which he sat “idly by and did nothing.”

         
Thus, we hold that Snell’s testimony establishes that his failure to answer the
State’s forfeiture case was not intentional or consciously indifferent but was,
at most, negligent.  See Briscoe, 327 S.W.3d at 747–48.  We
conclude that Snell satisfied the first part of the Craddock test to
obtain a new trial.  See Craddock, 134 Tex. at 393, 133 S.W.2d
at 126.

There
is no evidence of undue delay or injury to the State

         
“Once a defendant has alleged that granting a new trial will not injure the
plaintiff, the burden of going forward with proof of injury shifts to
the plaintiff. . . .  The goal to be achieved is to not unduly delay or
injure the plaintiff by granting the motion.”  Dir., State Emps.
Workers’ Comp. Div. v. Evans, 889 S.W.2d 266, 270 (Tex. 1994) (emphasis
added); see Estate of Pollack v. McMurrey, 858 S.W.2d 388, 393 (Tex.
1993) (“The Estate’s motion for new trial represented that granting the motion
would not cause delay or prejudice McMurrey.  This representation
shifted the burden to McMurrey to prove injury.”); Briscoe, 327 S.W.3d
at 749.  Snell alleged in his motion to set aside the default judgment
that a new trial would “neither occasion delay nor prejudice [the State]
because all of the witnesses are still available and [the State] will not be
prejudiced in presenting the merits of [its] case.”  The State did not present
evidence to show undue delay or injury; rather, the State argues in its brief
that “[i]n these tough economic times, surely the [$8,780] could and would be
useful for necessities for the District Attorney’s Office.”  We conclude
that this conclusory statement does not satisfy the State’s burden to prove
injury.  See Evans, 889 S.W.2d at 270.

         
Furthermore, Snell said that he was willing to pay the State’s expenses
incurred in obtaining the default judgment if the trial court set it
aside.  The willingness of a party to pay the expenses of obtaining
the default judgment is an important factor under the Craddock
test.  See id. at 270 n.3.

The
trial court abused its discretion

         
For these reasons, we conclude that Snell satisfied each of the elements to
obtain a new trial under Craddock, and we hold that the trial court
abused its discretion by denying his motion to set aside the default
judgment.  See Dolgencorp, 288 S.W.3d at 926.  We sustain
Snell’s second issue.[13]

Conclusion

         
Having sustained Snell’s second issue, we reverse the default judgment for the
State and remand the case for further proceedings.

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

 

DELIVERED:  March 31,
2011














[1]See Tex. R. App. P. 47.4.





[2]See Tex. Code Crim. Proc. Ann.
arts. 59.01(2)(B)–(D), .02(a) (Vernon Supp. 2010).





[3]See id. art. 59.04(b), (i)
(Vernon Supp. 2010); Tex. R. Civ. P. 106(a)(2).





[4]The State sent the certified mail to
California.  The record indicates that the first attempt at service
through certified mail was returned to the sender and that the second attempt
was delivered to someone other than Snell.





[5]See Tex. Code Crim. Proc. Ann.
art. 59.05(a) (Vernon 2006) (stating that in a chapter 59 forfeiture
proceeding, all “parties must comply with the rules of pleading as required in
civil suits”); Tex. R. Civ. P. 99(b), 239; see also One Thousand Three
Hundred Fifty Four U.S. Dollars v. State, No. 11-06-00310-CV, 2008 WL
802989, at *1–2 (Tex. App.—Eastland Mar. 27, 2008, no pet.) (mem. op.)
(affirming a no-answer default judgment issued in a chapter 59 forfeiture
proceeding).





[6]Snell explained that he drove a truck
to take loads from California to Mississippi for a freight brokerage
company.  The brokerage company paid him with checks, which he
cashed.  He carried the cash in his truck, which he slept in at night, to
pay expenses.  According to Snell, in the month before the State seized
the $8,780, he cashed between ten and twelve thousand dollars in checks, and
the $8,780 came from cashing the checks.





[7]The trial court did not specify its
reason for denying Snell’s motion.





[8]“The defendant’s burden as to the
first Craddock element has been satisfied when the factual assertions,
if true, negate intentional or consciously indifferent conduct by the defendant
and the factual assertions are not controverted by the plaintiff.”  In
re R.R., 209 S.W.3d 112, 115 (Tex. 2006).





[9]Snell testified that he was in a
hospital for heart problems shortly before being returned to Parker County
custody.





[10]Snell has remained in Parker County
custody since that time (he did not post a bond).  He testified that he
could not call an attorney’s office from jail to discuss the forfeiture case.





[11]Snell
graduated high school and attended some college, but he did not have legal
training or experience in other civil lawsuits.  He testified that he did
not know that an answer could be filed by sending a letter to the court.





[12]The record does not disclose the
exact date of the conversation between Snell and his criminal attorney about
the forfeiture case, but it indicates that it was after the “deadline had
passed.”





[13]Because sustaining Snell’s second
issue results in the relief he has prayed for (remand to the trial court), we
will not address his first issue, which concerns the State’s alleged lack of
diligence in serving process upon him.  See Tex. R. App. P.
47.1; Briscoe, 327 S.W.3d at 750 n.4.