

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-09-057-CV

HAMPTON-VAUGHAN FUNERAL
HOME, HAMPTON-VAUGHAN
FUNERAL DIRECTORS, HAMPTON-
VAUGHAN FUNERAL DIRECTORS,
INC., SCI FUNERAL SERVICES OF
TEXAS, INC., HAMPTON-VAUGHAN
CRESTVIEW MEMORIA, SCI TEXAS
FUNERAL SERVICES, INC., AND
CRESTVIEW MEMORIAL PARK

APPELLANTS

V.

BEVERLY N. BRISCOE, DON I.
BRISCOE, JR., REBECCA L.
LLENAS, LORI K. MORROW,
CHERL L. TEAGUE, THOMAS E.
BRISCOE, AND ANNA M. EVANS

APPELLEES

------------

## FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## OPINION

------------

This is an appeal from a no-answer default judgment. In three issues,

appellants—Hampton-Vaughan Funeral Home, Hampton-Vaughan Funeral

Directors, Hampton-Vaughan Funeral Directors, Inc., SCI Funeral Services of Texas, Inc., Hampton-Vaughan Crestview Memoria, SCI Texas Funeral Services, Inc., and Crestview Memorial Park—contend that the trial court abused its discretion by (1) striking as untimely the second supplement to their motion to set aside default judgment, (2) denying their motion to set aside default judgment, and (3) awarding damages that lacked sufficient evidentiary support.  We reverse and remand for a new trial.

## Background Facts

Appellees—Beverly N. Briscoe, Don I. Briscoe, Jr., Rebecca L. Llenas, Lori K. Morrow, Cherl L. Teague, Thomas E. Briscoe, and Anna M. Evans—sued appellants and two others for breach of contract, fraud, negligent misrepresentation, fraudulent nondisclosure, intentional infliction of emotional distress, negligence, negligence per se, negligent hiring, and DTPA violations arising out of appellants' alleged mishandling of the ashes of appellees' deceased relative, Don Briscoe.  Appellees requested actual damages, punitive damages, DTPA damages, and attorney's fees.

Appellees served appellants but not the remaining two defendants. Counsel for appellants and appellees agreed to a forty-five day extension on the answer date.[1]  Despite the extension, appellants failed to file an answer, and

---

[1]Appellants characterize the extension as a Rule 11 Agreement, and, as evidence of the agreement, they submitted a thank–you letter from appellants' in-house litigation counsel, which is signed by both appellants' and appellees' attorneys, as Exhibit A to their motion for default judgment.

appellees moved for a default judgment over seven months later. Appellants did not receive notice and thus did not respond.

After a hearing on August 1, 2008, the trial court rendered a default judgment against appellants on every cause of action except the negligent hiring and DTPA claims. Although the trial court had orally pronounced judgment in specific amounts for each appellee at the close of the hearing on the motion for default judgment, the written judgment reflects only one award of $850,000 to all appellees as a "collective unit."[2] Additionally, the trial court awarded appellees $340,000 in attorney's fees.

Upon receiving notice of the default judgment, appellants timely filed a motion to set it aside. Attached to the motion is the affidavit of Christopher Farmer, in-house litigation counsel for appellants. Farmer averred that he thought the parties' representatives were going to meet and discuss settlement. He understood that his presence at the meeting was not necessary, but he assumed appellees' counsel would contact him after the meeting to report whether the case had settled. Further, Farmer said that he attempted to contact appellees' counsel several times, but his telephone calls were not returned. He claimed that he received no further communication from appellees' counsel or

---

[2]The default judgment did not award appellees relief or damages against the two named defendants who were never served. However, appellees nonsuited their claims against them on November 25, 2008, thus making the default judgment final and appealable. *Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496 (Tex. 1995); *Sheraton Homes, Inc. v. Shipley*, 137 S.W.3d 379, 381 (Tex. App.—Dallas 2004, no pet.).

any other communication about the case's status until he received a notice of default judgment.

Appellants filed two supplements to their motion to set aside the default judgment; the second supplement was filed more than thirty days after the trial court rendered default judgment.[3] At the hearing on the motion to set aside default judgment, the trial court granted appellees' motion to strike appellants' second supplement for exceeding the thirty-day window in rule 329b. *See generally* Tex. R. Civ. P. 329b. The trial court subsequently denied the motion to set aside the default judgment.

## Striking of Second Supplement

In their first issue, appellants contend that the trial court abused its discretion by striking their second supplement to the motion to set aside default judgment as untimely. The trial court signed the default judgment on August 22, 2008. Appellants filed their motion to set aside the default judgment on September 10, 2008, a supplemental motion that same day, and a second supplement on October 22, 2008. Appellees moved to strike the second supplement, claiming that it was not filed within thirty days of the default judgment as required by rule 329b(a). Tex. R. Civ. P. 329b(a). However, because appellees did not nonsuit the two remaining defendants until November

---

[3]The second supplement included an affidavit disputing appellees' allegations in the suit and attempting to establish defenses to the individual claims. In addition, appellants challenged the damages award.

4

25, 2008, the default judgment was not yet final—and therefore not subject to the rule 329b deadlines—until that date. *See Clarendon Nat'l Ins. Co. v. Thompson*, 199 S.W.3d 482, 492 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Sheraton Homes, Inc. v. Shipley*, 137 S.W.3d 379, 381 (Tex. App.—Dallas 2004, no pet). Accordingly, the trial court abused its discretion by striking appellants' second supplement as untimely. We sustain appellants' first issue.

## Propriety of Default Judgment

In their second issue, appellants argue that the trial court erred by denying their motion to set aside the default judgment.

A default judgment should be set aside and a new trial granted when the defaulting party establishes that (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009); *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). We review a trial court's refusal to grant a motion for new trial for abuse of discretion. *Dolgencorp*, 288 S.W.3d at 926; *Cliff v. Huggins*, 724 S.W.2d 778, 778 (Tex. 1987). When a defaulting party moving for new trial meets all three elements of the *Craddock* test, then a trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp*, 288 S.W.3d at 926; *Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994).

5

**Failure to Answer Not Intentional or Result of Conscious Indifference**

In their initial motion to set aside, appellants contended that their failure to answer was not the result of conscious indifference because their attorney "was attempting to resolve matters . . . on a pre-litigation basis." Farmer's affidavit, which was attached to the original motion, indicates that after appellees filed the litigation, Farmer "entered into a Rule 11 agreement with [appellees'] counsel," which "involved an extension for the filing of an Answer." The letter was attached as an exhibit to the motion. Farmer also averred that

> 4. In addition to that correspondence, I had communications with counsel for [appellees] by which I understood that counsel for [appellees], and his clients, intended to meet with a representative of Hampton-Vaughan Funeral Home to discuss the circumstances of the incident made the basis of the suit. I understood that a Hampton-Vaughan representative was going to explain to the [appellees'] family what occurred and an attempt would be made at that time to resolve the litigation. It was not anticipated that I would be present at this meeting.

> 5. I assumed that the meeting would occur and that opposing counsel would get back with me on whether or not the litigation had been resolved.

> 6. I also phoned counsel a number of times during . . . Spring, 2008 and thereafter to determine the status, and did not receive a return call or communication. My next communication was receiving the default notice on Friday, August 29, 2008. . . .

> 7. The event of default judgment was not as a result of indifference on behalf of any of [appellants]. The anticipated meeting at Hampton-Vaughan did not occur and I did not become aware of that fact until after I learned of the default.

> 8. I did not receive any notice of the filing of [appellees'] motion for default or notice of the hearing (if any) on the default motion. If I had received notice of a hearing on [appellees'] Motion

6

for Default Judgment, I would have immediately retained counsel and had counsel file an Answer on behalf of all [appellants].

Appellees responded to appellants' motion and attached an affidavit from their counsel. He does not confirm or deny that Farmer attempted to contact him; however, he does contend that Farmer was consciously indifferent by failing to make efforts to set up the meeting between a Hampton Vaughan representative and appellees, and he also avers that he "did not agree to be responsible for any aspect of arranging the proposed meeting." Moreover, he contends that the letter about extending the answer date was not an enforceable Rule 11 agreement as Farmer claimed.

Intentional or conscious indifference for purposes of *Craddock* means "that the defendant knew it was sued but did not care." *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co*., 186 S.W.3d 571, 576 (Tex. 2006). A defendant's mere negligence does not show conscious indifference. *Id*.; *see also Levine v. Shackelford, Melton, & McKinley, L.L.P*., 248 S.W.3d 166, 168 (Tex. 2008) (denying motion for rehearing). A defendant must offer some excuse, which need not necessarily be a good excuse. *McClure v. Landis*, 959 S.W.2d 679, 681 (Tex. App.—Austin 1997, pet. denied).

Regardless of whether the letter attached to Farmer's affidavit constituted an enforceable Rule 11 agreement, Farmer knew that if the answer date had been extended, it was for only a short time. But he also assumed that a meeting would take place and that he would hear whether or not the suit was going to

proceed; it is not clear whether Farmer thought appellees' counsel was responsible for arranging this meeting or whether a Hampton Vaughan employee was responsible. Regardless, this situation is unlike that in *Levine v. Shackelford, Melton, & McKinley, L.L.P.*, in which the attorney attempted but failed to obtain an extension, agreed to answer by the deadline, failed to file an answer, was contacted more than once by opposing counsel that the deadline had been extended and that a default would be taken, emailed a draft answer to opposing counsel, and yet attended mediation without having filed an answer. 248 S.W.3d at 168. Instead, the situation here is akin to mere negligence; there is nothing to indicate that Farmer intentionally chose not to answer the suit. Although his explanation and failure to act may be unreasonable behavior for an attorney, it does not indicate a conscious decision to avoid answering the suit. *See Cervantes v. Cervantes*, No. 03-07-00381-CV, 2009 WL 3682637, at *8 (Tex. App.—Austin Nov. 5, 2009, no pet.) (mem. op.). Accordingly, we conclude and hold that appellants presented evidence satisfying the first *Craddock* factor.

**Appellants Presented Evidence of a Meritorious Defense**

Setting up a meritorious defense does not require proof "in the accepted sense." *Dolgencorp*, 288 S.W.3d at 927–28. Rather, the motion sets up a meritorious defense if it alleges facts which in law would constitute a defense to the plaintiff's cause of action and is supported by affidavits or other evidence providing prima facie proof that the defendant has such a defense. *Id*. at 928.

8

Once such requirements are met, controverting evidence offered by the nonmovant should not be considered. *Id.*

Appellants attached the affidavit of Billy Robinson, the general manager of the funeral home, to the motion to set aside. He avers that, to the best of his knowledge, the funeral home did not lose Don Briscoe's remains and did not substitute his remains "as alleged in the petition." They also attached to the second supplement the affidavit of Timothy Rolfs, the funeral home's market manager, along with a copy of a letter Rolfs had written to the Texas Funeral Services Commission. In the letter, Rolfs explains the funeral home's usual practices with regard to cremated remains and appellants' version of what happened specifically regarding Don Briscoe's remains. According to Rolfs, a funeral home employee was inventorying temporary urns, found Don Briscoe's, called Beverly Briscoe to see if she wanted the temporary urn, learned she had a permanent urn with what she thought were Don's remains, and asked if he could come check the permanent urn. The funeral home employee then went to Beverly's house, picked up the permanent urn, took it back to the funeral home, opened it to check the medallion inside and verify that it matched the number for Don Briscoe, then returned the urn to Beverly's house, where he showed Beverly's daughter the remains and medallion inside.

The version of the facts in Rolfs's letter contradicts the factual allegations in appellees' petition, upon which all of their claims are based: that the funeral home employee "discovered that the remains of Don I. Briscoe were, in fact, not

9

delivered to [appellees] at the time that the urn was delivered" and that appellants deceived appellees by tricking Beverly into returning the urn so that the employee could surreptitiously place remains inside. Appellees further alleged that they do not know whose remains are now inside the urn. In effect, appellants contend that the urn always contained Don's remains, that they never substituted his or any other person's remains in the permanent urn, and that the employee took the urn merely to verify that fact. Appellees, on the other hand, maintain that there were no remains in the permanent urn until the funeral home took it and placed unknown remains inside. If appellants' version of the facts is found to be true, appellees' claims—which are all based on their alleged version of events—must necessarily fail. Accordingly, we conclude and hold that appellants set up a meritorious defense to appellees' claims. *See id*. at 928–29; *Anderson v. Anderson*, 282 S.W.3d 150, 155 (Tex. App.——El Paso 2009, no pet.) ("The true test is whether or not the defense raised and supported with evidence would change the result of the default judgment.").

**Appellees Did Not Prove They Would Be Injured by New Trial or Delay**

Appellants further contend that there is no evidence that appellees would be unduly delayed or otherwise injured by a new trial. Appellants alleged in their motion to set aside that they "offered to compensate opposing counsel for his time in obtaining a default judgment *so that [appellees] are not prejudiced*." [Emphasis added.] Appellees contend that appellants did not meet this *Craddock* prong because they never stated that they were ready, willing, and

10

able to go to trial immediately; appellees also contend that any offer to compensate their attorneys for time spent on the default judgment was inadequate.

"Once a defendant has alleged that granting a new trial will not injure the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff." *Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 270 (Tex. 1994). The purpose of this third element of the *Craddock* test is to protect a plaintiff against the sort of undue delay or injury that would disadvantage her in presenting the merits of her case at a new trial, such as a loss of witnesses or other valuable evidence; evidence of a delay in obtaining compensation for injuries for which a plaintiff is entitled is not the type of injury that this prong speaks to. *Id*. at 270.

Here, only three of the seven plaintiffs testified at the default judgment hearing; appellees did not allege that any valuable evidence would be lost or that essential witnesses would be unavailable for a new trial. Appellees likewise offered no other evidence that they would be injured by the granting of a new trial; the only evidence put forward was that an offer by appellants' counsel to reimburse appellees' counsel $500 would be inadequate to compensate appellees' counsel for his time spent obtaining the default judgment. Finally, the absence of a statement by appellants that they are willing to go to trial immediately is not dispositive. *Id*. at 270 n.3.; *Jaco v. Rivera*, 278 S.W.3d 867, 873–74 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Accordingly, we

11

conclude and hold that appellants met the third *Craddock* factor because they alleged that appellees would not be prejudiced by a new trial, and appellees failed to bring forward any evidence proving that they would be injured. *See Evans*, 889 S.W.2d at 270 ("The willingness of a party to go to trial immediately and pay the expenses of the default judgment are important factors for the court to look to in determining whether it should grant a new trial [but] are not dispositive of whether the motion should be granted.").

Having determined that appellants met their burden as to all three *Craddock* factors, we conclude and hold that the trial court abused its discretion by denying their motion to set aside the default judgment. We sustain appellant's second issue.

## Conclusion

Having sustained appellants' first and second issues, we reverse the default judgment for appellees and remand the case for trial.[4]

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED: September 30, 2010

---

[4]Having determined that the default judgment should be set aside, we need not address appellants' third issue challenging the legal and factual sufficiency of the damages awarded by the trial court. *See* Tex. R. App. P. 47.1.; *Horsley-Layman v. Adventist Health Sys./Sunbelt, Inc.*, 221 S.W.3d 802, 809 (Tex. App.—Fort Worth 2007, pet. denied).