

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00417-CV

JOHN E. BOATMAN                                                    APPELLANT

V.

BRADLEY M. GRIFFIN, INC. D/B/A                                     APPELLEE
HOME THEATER DESIGN GROUP

----------

## FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant John E. Boatman appeals the trial court's postanswer default judgment in favor of appellee Bradley M. Griffin, Inc. d/b/a Home Theater Design Group. Appellant contends that the trial court abused its discretion by refusing to grant a new trial because he met each of the elements for setting aside a default judgment under *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 393, 133

---

[1]*See* Tex. R. App. P. 47.4.

S.W.2d 124, 126 (1939). We disagree, and we therefore affirm the trial court's judgment.

## Background Facts

In April 2009, appellee sued appellant for "amounts due and owing pursuant to a contract." Appellee alleged in his sworn petition that appellant had contracted for the purchase and installation of various items of home electronic equipment but that appellant had refused to pay an invoice related to the goods and services.[2] Appellee brought claims for breach of contract, suit on a sworn account, and quantum meruit, and appellee requested damages for the amount owed ($12,691.35), interest, attorney's fees, and costs.

After appellant did not initially answer appellee's suit, appellee sought a no-answer default judgment. But on June 4, 2009, appellant filed an answer. The answer contained a general denial, asserted that appellee "never completed the home theater system, which . . . [did] not work," and alleged that appellant had been "forced to seek cover to enable even partial use of the system promised by [appellee]." Appellant therefore requested an offset of the amount that he paid other contractors, and he asserted a breach of contract counterclaim. Appellant's answer was not sworn. Because of appellant's answer

---

[2]The petition was verified by Sheri Griffin, the president of Home Theater Design Group. Sheri affirmed that appellee had "provided the goods and services to [appellant] under the explicit agreement and business dealings between the parties that [appellant] would timely pay to [appellee] the value of the goods and services." Appellee attached copies of the original invoice (which itemized the goods and services) and the most recent invoice to the petition.

and in conjunction with the parties' agreement, the trial court set aside the no-answer default judgment that it had signed on June 5 and set the case for a jury trial on September 14, 2009.

The case did not proceed to trial in September. Instead, in November 2009, appellee's attorney sent a letter to appellant's attorney stating that the trial had been reset for February 8, 2010, with a docket call occurring on January 29, 2010. According to an affidavit filed by appellee's counsel, during the docket call, because of appellant's various medical problems, the parties jointly requested a special trial setting in August 2010, and appellant's counsel told the trial court that appellant would not request any other continuances.[3] In February 2010, appellee's attorney wrote a letter to appellant's counsel stating,

> Per our agreement reached as of last week and as announced to the Court . . . in light of [appellant's] medical issues, this letter confirms that the jury trial in this case now is **Specially Set at 9:00 a.m. on Monday August 16, 2010,** and Docket Call is at 10:30 a.m. on August 6, 2010 . . . .
>
> Please let me know if you have any questions or problems. Thank you.

About two weeks before trial, appellant wrote a letter that was received by the trial court on August 3, 2010. The letter stated in part,

> I am writing to inform the court that I am unable to locate my attorney that is representing me in this case. I have called their office and their phone number has been [disconnected], in addition, I have

---

[3]Appellant's original trial counsel called appellee's counsel on January 25, 2010 to state that appellant needed spinal surgery that would interfere with his ability to participate in the February 8 trial.

3

stopped by their offices and they are no longer there, I have called information to see if they have a new address . . . and they are not listed with any new address. I hired a private detective to find them, which he has been unable to do so. I am in the process of trying to hire a new attorney but am unable to [due] to some corrective spinal surgeries I have had in July. I have included the documents to prove I have [had] surgery since the last ones that caused this motion/case to be postponed.

The surgery I had in late July . . . is the 6th spinal surgery I have had since January 2010. I understand this case was postponed due to a surgery I had before, however this surgery was not planned for and had to happen before paralysis and permanent spinal damage occurred. . . . This isn't a minor surgery and does require a lot of recovery time. I . . . am not allowed to drive, sit or stand for any period of time and also am [on] heavy medications to prevent pain and also infection. Due to the fact that I am unable to be in court myself, I am unable to locate the attorney I paid for to represent me, and that I am not in the health to interview and hire new legal counsel, I am requesting an immediate postponement of the scheduled court date . . . . I am requesting a postponement of this case until a December or January hearing date. This will allow me to recover and bring a new attorney up to speed on the case since my attorney can't be found. Thank you for your consideration in this case and please approve this request for the listed causes. I look forward to hearing from the court.[4]

Appellant and his counsel did not attend the August 6, 2010 docket call. Appellee's attorney and the trial court were each unsuccessful in attempting to contact appellant's counsel, so appellee's attorney sent a letter personally to appellant to remind him of the August 16 trial setting. According to appellant, however, he has never lived at the address where appellee's counsel sent the letter; his relatives live there and only sometimes forward his mail sent there.

---

[4]The trial court's judgment states that to the extent this letter was intended to be a motion for continuance, the motion was denied.

4

Neither appellant nor his attorney appeared on August 16, but appellee appeared with counsel. After hearing brief testimony from Sheri about Home Theater Design Group's business relationship with appellant, the trial court signed a postanswer default judgment. The judgment dismissed appellant's counterclaim and awarded appellee $12,691.35 for the "sworn just and true amount due and owing," more than $5,000 in prejudgment interest, $20,000 for attorney's fees (plus additional amounts if appellant appealed the judgment), and postjudgment interest.

On August 23, appellant called appellee's counsel but did not talk to her or leave a message. After retaining new counsel, he then timely filed a motion for new trial that asked the trial court to set aside the default judgment under *Craddock*. His motion and affidavit alleged that he had completed six major spinal surgeries in the preceding thirty months. Appellant alleged that in July 2010 (a month before the scheduled trial date), he learned that he would need another procedure that would leave him "bedridden for a couple of weeks and on severe movement restrictions for 3–6 months."[5] His affidavit confirms that he attempted to contact his counsel about this information but was never able to

---

[5]This procedure, a spinal surgery, actually occurred on July 14. Appellant attached a letter from a doctor; the letter confirmed that appellant had an anterior cervical diskectomy on that day and that the doctor recommended that appellant not participate in "civil litigation . . . for approximately 3–6 months to allow for healing time and increased sitting tolerance." Appellant later submitted another letter that confirmed the July 14 surgery and advised that appellant not participate in activities that require prolonged sitting.

5

reach them because their phone number was not working, his e-mails to them were not returned, a private investigator who he hired could not find them, and although his wife went to their office, she discovered that they were no longer occupying the space.  According to appellant, because he could not contact his counsel (who he had paid a flat fee for representation through the entire case and who he last spoke with six months before the trial date), he called the trial court on the telephone and was advised to write the August 3 letter.  After he had surgery on July 14, he did not attend trial because he believed that his letter would excuse his absence.

Appellee opposed appellant's motion for new trial.  After hearing the parties' arguments on the motion in a non-evidentiary hearing, the trial court denied it.[6]  Appellant brought this appeal.

## The Trial Court's Denial of Appellant's Motion for New Trial

In his only issue, appellant contends that the trial court abused its discretion by refusing to grant his motion for new trial and to set aside the postanswer default judgment.  "The law prefers that cases be disposed on their merits wherever possible, rather than by default."  *Gen. Elec. Capital Auto Fin. Leasing Servs., Inc. v. Stanfield*, 71 S.W.3d 351, 356 (Tex. App.—Tyler 2001, pet. denied); *see Hock v. Salaices*, 982 S.W.2d 591, 593 (Tex. App.—San Antonio 1998, no pet.) ("It is a basic tenet of jurisprudence that the law abhors a

---

[6]Appellant appeared by counsel at the motion for new trial hearing.

6

default. . . . Equity is rarely served by a default.") (citations omitted). As we have

explained,

> A default judgment should be set aside and a new trial granted when the defaulting party establishes that (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009); *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). We review a trial court's refusal to grant a motion for new trial for abuse of discretion. *Dolgencorp*, 288 S.W.3d at 926; *Cliff v. Huggins*, 724 S.W.2d 778, 778 (Tex. 1987). When a defaulting party moving for new trial meets all three elements of the *Craddock* test, then a trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp*, 288 S.W.3d at 926; *Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994).[7]

*Hampton-Vaughan Funeral Home v. Briscoe*, 327 S.W.3d 743, 746–47 (Tex.

App.—Fort Worth 2010, no pet.); *see Imkie v. Methodist Hosp.*, 326 S.W.3d 339,

345 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (op. on reh'g) (recognizing

that *Craddock* was based on "equitable principles"). To determine whether a trial

court abused its discretion, we must decide whether the trial court acted without

reference to any guiding rules or principles; in other words, whether the act was

arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d

238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986); *see Cont'l Cas.

Co. v. Davilla*, 139 S.W.3d 374, 378 (Tex. App.—Fort Worth 2004, pet. denied).

---

[7]The *Craddock* test applies to no-answer and postanswer default judgments. *See Dolgencorp*, 288 S.W.3d at 926; *Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1966).

Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 242; *Davilla*, 139 S.W.3d at 378. When a party's proof in support of a motion for new trial under *Craddock* is not controverted, the trial court may not disregard it. *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex. 2006) (citing *Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994)); *see Strackbein v. Prewitt*, 671 S.W.2d 37, 38–39 (Tex. 1984) (stating that it is "sufficient that the movant's motion and affidavits set forth facts which, if true, would negate . . . consciously indifferent conduct").

"Intentional or conscious indifference for purposes of *Craddock* means 'that the defendant knew it was sued but did not care.'" *Briscoe*, 327 S.W.3d at 747–48 (quoting *Fidelity*, 186 S.W.3d at 576). A defendant's mere negligence does not show conscious indifference. *Id.* at 748; *see Levine v. Shackelford, Melton & McKinley, L.L.P.*, 248 S.W.3d 166, 169 (Tex. 2008) ("[T]he complete definition of conscious indifference amounts to more than mere negligence."). A defendant must offer some excuse for the failure to appear at trial, which need not necessarily be a good excuse. *See Briscoe*, 327 S.W.3d at 748; *Sharpe v. Kilcoyne*, 962 S.W.2d 697, 701 (Tex. App.—Fort Worth 1998, no pet.) ("Even a slight excuse may justify a new trial."). In other words, a "failure to appear is not intentional or due to conscious indifference . . . merely because it is deliberate; it must also be without adequate justification. Proof of such justification—accident,

8

mistake or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied." *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995) (holding that a failure to appear at trial was not consciously indifferent when the party's attorney requested a continuance and mistakenly understood that a continuance would be granted). The party seeking a new trial has the burden to prove the lack of intent or conscious indifference. *Liberty Mut. Fire Ins. Co. v. Ybarra*, 751 S.W.2d 615, 617–18 (Tex. App.—El Paso 1988, no writ).

The facts show that appellant followed instructions to write a letter requesting a continuance and that he assumed that the letter would excuse his absence at trial.[8] Appellant's undisputed surgery about a month before his August 2010 trial and his verbal and written contact with the court about his medical condition could show, under different circumstances, that appellant had at least "some excuse" for not appearing at trial. *See Briscoe*, 327 S.W.3d at 748.

In denying appellant's motion for new trial, however, the trial judge observed, "[Appellant] said that he couldn't make it [to trial], but the fact that he moved and still works makes me think that he could be involved in litigation." In other words, the trial court found that appellant's excuse for failing to attend

---

[8]Appellant's affidavit states, "I . . . called the court and was advised to write a letter to the Court (but not to the Judge) and explain my situation." It is unclear who appellant actually spoke with when he "called the court."

trial was not credible, even if it otherwise might have been good. Indeed, although appellant's letter to the court, which the trial court received on August 3, 2010, stated that he "require[d] a lot of recovery time," that he was not "allowed to drive, sit or stand for any period of time," and that he therefore could not attend the August 16, 2010 trial,[9] his September 15, 2010 affidavit revealed that appellant had "recently moved to Pennsylvania in connection with [his] job."[10] The trial court could have reasonably found that this revelation was inconsistent with the remainder of appellant's affidavit, which indicated that his July 2010 surgery required "severe movement restrictions for 3–6 months" and that he would be ready for trial only "within the next few months." While appellant submitted an August 30, 2010 doctor's letter stating that appellant could not sit for prolonged periods, the trial court could have reasonably inferred that appellant nonetheless did so, at least to the same extent that he would have at trial, by moving out of state, presumably to work at the job he was moving there for.

We have held that "unbelievable and internally inconsistent excuses" cannot meet an appellant's burden of proof to show the lack of conscious indifference. *Folsom Invs., Inc. v. Troutz*, 632 S.W.2d 872, 875 (Tex. App.—Fort

---

[9]This case, involving one plaintiff, one defendant, and relatively simple claims, was not likely to take long to litigate at trial.

[10]As appellee contends, how appellant relocated from Texas to Pennsylvania without driving, sitting, or standing "remains a mystery."

Worth 1982, writ ref'd n.r.e.) (citing *Munson v. State*, 576 S.W.2d 440, 442 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.)).  In other words, while the cases cited above state that a trial court may not *disregard* uncontroverted evidence from a *Craddock* movant, the trial court may certainly compare that evidence to other evidence submitted by the movant.  *See id.*  In this case, we conclude that it was not arbitrary or unreasonable for the trial court to conclude that appellant's excuse for not personally attending the trial—his medical condition—was internally inconsistent with the part of his affidavit indicating that he had moved out of state because of his job at about the same time as the trial.  *See Munson*, 576 S.W.2d at 442 ("[T]he trial judge is not required to grant a new trial merely upon the advancement of an excuse, no matter how unbelievable."); *see also Titan Indem. Co. v. Old S. Ins. Group, Inc.*, 221 S.W.3d 703, 711 (Tex. App.— San Antonio 2006, no pet.) ("[T]he trial court is to determine credibility and . . . we cannot substitute our opinion for the trial court's when there is evidentiary support for the trial court's conclusion."); *Martinez v. Martinez*, 157 S.W.3d 467, 470 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (stating that in a *Craddock* review, the trial court is the "sole judge of the credibility of the witnesses and the weight to be given to their testimony").

We note that we are not reviewing the justness of a denial of a motion for continuance based on the apparent absconding of appellant's trial counsel and appellant's requesting more time to retain new counsel.  Rather, as appellant recognizes in his reply brief, we are reviewing the propriety of a default judgment

and the denial of a motion for new trial that both relate to appellant's failure to personally appear for trial. Although the facts related to appellant's original trial counsel are undisputed, they do not directly relate to appellant's absence at the trial on August 16, 2010.[11] Further, the trial court could have rationally determined that if appellant recovered from his surgery enough to hire a private investigator and move to Pennsylvania for his job, he could have obtained new counsel to appear at the trial, even if he could not appear personally.[12]

Because the trial court could have reasonably determined that appellant's reasons for not attending the trial that were stated in his letter and his affidavit were not credible or were fabricated, we hold that the trial court could also have reasonably found that the failure to appear (or failure to hire new counsel to appear) was intentional or consciously indifferent, rather than negligent or mistaken, even if appellant actually believed that the letter would excuse his absence. *See Briscoe*, 327 S.W.3d at 746–47.

---

[11]In his affidavit, appellant stated that he "expected that because [he] had paid [his original trial counsel] a flat fee to handle the case through trial, then if necessary, [counsel] would appear in court on [appellant's] behalf to handle any rescheduling." This alleged expectation, however, is inconsistent with appellant's previous letter, which stated that before the trial date arrived, he was in the "process of trying to hire a new attorney." At the end of the hearing on appellant's motion for new trial, the trial judge stated, "[Appellant] says that he thought his other attorney was going to show up; but he says he couldn't find . . . their office . . . . That doesn't seem . . . to be the truth, that he thought the attorney was going to show up."

[12]As appellee notes, appellant was able to obtain new counsel soon after receiving the trial court's judgment, when he was still recovering from his surgery.

Because we hold that the trial court did not abuse its discretion by finding that appellant was consciously indifferent toward appearing at trial, we need not address the other two *Craddock* elements. *See* Tex. R. App. P. 47.1; *Davilla*, 139 S.W.3d at 382. We overrule appellant's sole issue.

## Conclusion

Having overruled appellant's issue, we affirm the trial court's judgment.

                                                    TERRIE LIVINGSTON
                                                    CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED:  July 21, 2011