02-10-417-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00417-CV

 

 


 
 
 John E. Boatman
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Bradley M. Griffin, Inc. d/b/a Home Theater Design
 Group
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM THE 362nd
District Court OF Denton COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          Appellant
John E. Boatman appeals the trial court’s postanswer default judgment in favor
of appellee Bradley M. Griffin, Inc. d/b/a Home Theater Design Group.  Appellant
contends that the trial court abused its discretion by refusing to grant a new
trial because he met each of the elements for setting aside a default judgment
under Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 393, 133
S.W.2d 124, 126 (1939).  We disagree, and we therefore affirm the trial court’s
judgment.

Background
Facts

          In
April 2009, appellee sued appellant for “amounts due and owing pursuant to a
contract.”  Appellee alleged in his sworn petition that appellant had contracted
for the purchase and installation of various items of home electronic equipment
but that appellant had refused to pay an invoice related to the goods and
services.[2]  Appellee brought claims
for breach of contract, suit on a sworn account, and quantum meruit, and
appellee requested damages for the amount owed ($12,691.35), interest,
attorney’s fees, and costs.

          After
appellant did not initially answer appellee’s suit, appellee sought a no-answer
default judgment.  But on June 4, 2009, appellant filed an answer.  The answer
contained a general denial, asserted that appellee “never completed the home
theater system, which . . . [did] not work,” and alleged that appellant had
been “forced to seek cover to enable even partial use of the system promised by
[appellee].”  Appellant therefore requested an offset of the amount that he
paid other contractors, and he asserted a breach of contract counterclaim.  Appellant’s
answer was not sworn.  Because of appellant’s answer and in conjunction with
the parties’ agreement, the trial court set aside the no-answer default
judgment that it had signed on June 5 and set the case for a jury trial on
September 14, 2009.

          The
case did not proceed to trial in September.  Instead, in November 2009,
appellee’s attorney sent a letter to appellant’s attorney stating that the trial
had been reset for February 8, 2010, with a docket call occurring on January
29, 2010.  According to an affidavit filed by appellee’s counsel, during the
docket call, because of appellant’s various medical problems, the parties
jointly requested a special trial setting in August 2010, and appellant’s
counsel told the trial court that appellant would not request any other continuances.[3] 
In February 2010, appellee’s attorney wrote a letter to appellant’s counsel
stating,

Per our agreement reached as of last week and as
announced to the Court . . . in light of [appellant’s] medical issues, this
letter confirms that the jury trial in this case now is Specially Set at
9:00 a.m. on Monday August 16, 2010, and Docket Call is at 10:30 a.m. on
August 6, 2010 . . . .

          Please let
me know if you have any questions or problems.  Thank you.

          About
two weeks before trial, appellant wrote a letter that was received by the trial
court on August 3, 2010.  The letter stated in part,

I am writing to inform the court that I am unable to
locate my attorney that is representing me in this case.  I have called their
office and their phone number has been [disconnected], in addition, I have
stopped by their offices and they are no longer there, I have called
information to see if they have a new address . . . and they are not listed
with any new address.  I hired a private detective to find them, which he has
been unable to do so.  I am in the process of trying to hire a new attorney but
am unable to [due] to some corrective spinal surgeries I have had in July.  I
have included the documents to prove I have [had] surgery since the last ones
that caused this motion/case to be postponed.

          The surgery I had in late July . . . is the 6th
spinal surgery I have had since January 2010.  I understand this case was postponed
due to a surgery I had before, however this surgery was not planned for and had
to happen before paralysis and permanent spinal damage occurred. . . .  This
isn’t a minor surgery and does require a lot of recovery time.  I . . . am not
allowed to drive, sit or stand for any period of time and also am [on] heavy
medications to prevent pain and also infection.  Due to the fact that I am
unable to be in court myself, I am unable to locate the attorney I paid for to
represent me, and that I am not in the health to interview and hire new legal
counsel, I am requesting an immediate postponement of the scheduled court date
. . . .  I am requesting a postponement of this case until a December or
January hearing date.  This will allow me to recover and bring a new attorney
up to speed on the case since my attorney can’t be found.  Thank you for your
consideration in this case and please approve this request for the listed
causes.  I look forward to hearing from the court.[[4]]

          Appellant
and his counsel did not attend the August 6, 2010 docket call.  Appellee’s
attorney and the trial court were each unsuccessful in attempting to contact
appellant’s counsel, so appellee’s attorney sent a letter personally to
appellant to remind him of the August 16 trial setting.  According to
appellant, however, he has never lived at the address where appellee’s counsel
sent the letter; his relatives live there and only sometimes forward his mail
sent there.

          Neither
appellant nor his attorney appeared on August 16, but appellee appeared with
counsel.  After hearing brief testimony from Sheri about Home Theater Design
Group’s business relationship with appellant, the trial court signed a
postanswer default judgment.  The judgment dismissed appellant’s counterclaim
and awarded appellee $12,691.35 for the “sworn just and true amount due and
owing,” more than $5,000 in prejudgment interest, $20,000 for attorney’s fees
(plus additional amounts if appellant appealed the judgment), and postjudgment
interest.

          On
August 23, appellant called appellee’s counsel but did not talk to her or leave
a message.  After retaining new counsel, he then timely filed a motion for new
trial that asked the trial court to set aside the default judgment under Craddock. 
His motion and affidavit alleged that he had completed six major spinal
surgeries in the preceding thirty months. Appellant alleged that in July 2010
(a month before the scheduled trial date), he learned that he would need
another procedure that would leave him “bedridden for a couple of weeks and on
severe movement restrictions for 3–6 months.”[5]  His affidavit confirms
that he attempted to contact his counsel about this information but was never
able to reach them because their phone number was not working, his e-mails to
them were not returned, a private investigator who he hired could not find
them, and although his wife went to their office, she discovered that they were
no longer occupying the space.  According to appellant, because he could not
contact his counsel (who he had paid a flat fee for representation through the
entire case and who he last spoke with six months before the trial date), he called
the trial court on the telephone and was advised to write the August 3 letter. 
After he had surgery on July 14, he did not attend trial because he believed
that his letter would excuse his absence.

          Appellee
opposed appellant’s motion for new trial.  After hearing the parties’ arguments
on the motion in a non-evidentiary hearing, the trial court denied it.[6] 
Appellant brought this appeal.

The Trial
Court’s Denial of Appellant’s Motion for New Trial

          In
his only issue, appellant contends that the trial court abused its discretion
by refusing to grant his motion for new trial and to set aside the postanswer
default judgment.  “The law prefers that cases be disposed on their merits
wherever possible, rather than by default.”  Gen. Elec. Capital Auto Fin.
Leasing Servs., Inc. v. Stanfield, 71 S.W.3d 351, 356 (Tex. App.—Tyler
2001, pet. denied); see Hock v. Salaices, 982 S.W.2d 591, 593 (Tex.
App.—San Antonio 1998, no pet.) (“It is a basic tenet of jurisprudence that the
law abhors a default. . . .  Equity is rarely served by a default.”) (citations
omitted).  As we have explained,

          A default judgment should be set aside and a
new trial granted when the defaulting party establishes that (1) the failure to
appear was not intentional or the result of conscious indifference, but was the
result of an accident or mistake, (2) the motion for new trial sets up a
meritorious defense, and (3) granting the motion will occasion no delay or
otherwise injure the plaintiff.  Dolgencorp of Tex., Inc. v. Lerma, 288
S.W.3d 922, 925 (Tex. 2009); Craddock v. Sunshine Bus Lines, Inc., 134
Tex. 388, 133 S.W.2d 124, 126 (1939). We review a trial court’s refusal to
grant a motion for new trial for abuse of discretion.  Dolgencorp, 288
S.W.3d at 926; Cliff v. Huggins, 724 S.W.2d 778, 778 (Tex. 1987).  When
a defaulting party moving for new trial meets all three elements of the Craddock
test, then a trial court abuses its discretion if it fails to grant a new
trial.  Dolgencorp, 288 S.W.3d at 926; Old Republic Ins. Co. v. Scott,
873 S.W.2d 381, 382 (Tex. 1994).[[7]]

Hampton-Vaughan
Funeral Home v. Briscoe, 327 S.W.3d 743, 746–47 (Tex. App.—Fort
Worth 2010, no pet.); see Imkie v. Methodist Hosp., 326 S.W.3d 339, 345
(Tex. App.—Houston [1st Dist.] 2010, no pet.) (op. on reh’g) (recognizing that Craddock
was based on “equitable principles”).  To determine whether a trial court
abused its discretion, we must decide whether the trial court acted without
reference to any guiding rules or principles; in other words, whether the act
was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241–42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986); see
Cont’l Cas. Co. v. Davilla, 139 S.W.3d 374, 378 (Tex. App.—Fort Worth 2004,
pet. denied).  Merely because a trial court may decide a matter within its
discretion in a different manner than an appellate court would in a similar
circumstance does not demonstrate that an abuse of discretion has occurred.  Downer,
701 S.W.2d at 242; Davilla, 139 S.W.3d at 378.  When a party’s proof in
support of a motion for new trial under Craddock is not controverted,
the trial court may not disregard it.  Fidelity & Guar. Ins. Co. v.
Drewery Constr. Co., 186 S.W.3d 571, 576 (Tex. 2006) (citing Dir., State
Employees Workers’ Comp. Div. v. Evans, 889 S.W.2d 266, 269 (Tex. 1994));
see Strackbein v. Prewitt, 671 S.W.2d 37, 38–39 (Tex. 1984) (stating that
it is “sufficient that the movant’s motion and affidavits set forth facts
which, if true, would negate . . . consciously indifferent conduct”).

          “Intentional
or conscious indifference for purposes of Craddock means ‘that the
defendant knew it was sued but did not care.’”  Briscoe, 327 S.W.3d at 747–48
(quoting Fidelity, 186 S.W.3d at 576).  A defendant’s mere negligence
does not show conscious indifference. Id. at 748; see Levine v.
Shackelford, Melton & McKinley, L.L.P., 248 S.W.3d 166, 169 (Tex. 2008)
(“[T]he complete definition of conscious indifference amounts to more than mere
negligence.”).  A defendant must offer some excuse for the failure to appear
at trial, which need not necessarily be a good excuse.  See Briscoe,
327 S.W.3d at 748; Sharpe v. Kilcoyne, 962 S.W.2d 697, 701 (Tex. App.—Fort
Worth 1998, no pet.) (“Even a slight excuse may justify a new trial.”).  In
other words, a “failure to appear is not intentional or due to conscious
indifference . . . merely because it is deliberate; it must also be without
adequate justification.  Proof of such justification—accident, mistake or other
reasonable explanation—negates the intent or conscious indifference for which
reinstatement can be denied.”  Smith v. Babcock & Wilcox Constr. Co.,
913 S.W.2d 467, 468 (Tex. 1995) (holding that a failure to appear at trial was
not consciously indifferent when the party’s attorney requested a continuance
and mistakenly understood that a continuance would be granted).  The party
seeking a new trial has the burden to prove the lack of intent or conscious
indifference.  Liberty Mut. Fire Ins. Co. v. Ybarra, 751 S.W.2d 615, 617–18
(Tex. App.—El Paso 1988, no writ).

          The
facts show that appellant followed instructions to write a letter requesting a
continuance and that he assumed that the letter would excuse his absence at
trial.[8]  Appellant’s undisputed surgery
about a month before his August 2010 trial and his verbal and written contact
with the court about his medical condition could show, under different
circumstances, that appellant had at least “some excuse” for not appearing at
trial.  See Briscoe, 327 S.W.3d at 748.  

          In
denying appellant’s motion for new trial, however, the trial judge observed,
“[Appellant] said that he couldn’t make it [to trial], but the fact that he
moved and still works makes me think that he could be involved in litigation.” 
In other words, the trial court found that appellant’s excuse for failing
to attend trial was not credible, even if it otherwise might have been good.  Indeed,
although appellant’s letter to the court, which the trial court received on
August 3, 2010, stated that he “require[d] a lot of recovery time,” that he was
not “allowed to drive, sit or stand for any period of time,” and that he
therefore could not attend the August 16, 2010 trial,[9]
his September 15, 2010 affidavit revealed that appellant had “recently moved to
Pennsylvania in connection with [his] job.”[10]  The trial court could
have reasonably found that this revelation was inconsistent with the remainder of
appellant’s affidavit, which indicated that his July 2010 surgery required
“severe movement restrictions for 3–6 months” and that he would be ready for
trial only “within the next few months.”  While appellant submitted an August
30, 2010 doctor’s letter stating that appellant could not sit for prolonged periods,
the trial court could have reasonably inferred that appellant nonetheless did
so, at least to the same extent that he would have at trial, by moving out of
state, presumably to work at the job he was moving there for.

          We
have held that “unbelievable and internally inconsistent excuses” cannot meet an
appellant’s burden of proof to show the lack of conscious indifference.  Folsom
Invs., Inc. v. Troutz, 632 S.W.2d 872, 875 (Tex. App.—Fort Worth 1982, writ
ref’d n.r.e.) (citing Munson v. State, 576 S.W.2d 440, 442 (Tex. Civ.
App.—Austin 1978, writ ref’d n.r.e.)).  In other words, while the cases cited
above state that a trial court may not disregard uncontroverted evidence
from a Craddock movant, the trial court may certainly compare that
evidence to other evidence submitted by the movant.  See id.  In this
case, we conclude that it was not arbitrary or unreasonable for the trial court
to conclude that appellant’s excuse for not personally attending the trial—his
medical condition—was internally inconsistent with the part of his affidavit
indicating that he had moved out of state because of his job at about the same
time as the trial.  See Munson, 576 S.W.2d at 442 (“[T]he trial judge is
not required to grant a new trial merely upon the advancement of an excuse, no
matter how unbelievable.”); see also Titan Indem. Co. v. Old S. Ins. Group,
Inc., 221 S.W.3d 703, 711 (Tex. App.—San Antonio 2006, no pet.) (“[T]he
trial court is to determine credibility and . . . we cannot substitute our
opinion for the trial court’s when there is evidentiary support for the trial
court’s conclusion.”); Martinez v. Martinez, 157 S.W.3d 467, 470 (Tex.
App.—Houston [14th Dist.] 2004, no pet.) (stating that in a Craddock
review, the trial court is the “sole judge of the credibility of the witnesses
and the weight to be given to their testimony”).

          We
note that we are not reviewing the justness of a denial of a motion for
continuance based on the apparent absconding of appellant’s trial counsel and
appellant’s requesting more time to retain new counsel.  Rather, as appellant
recognizes in his reply brief, we are reviewing the propriety of a default
judgment and the denial of a motion for new trial that both relate to
appellant’s failure to personally appear for trial.  Although the facts related
to appellant’s original trial counsel are undisputed, they do not directly
relate to appellant’s absence at the trial on August 16, 2010.[11] 
Further, the trial court could have rationally determined that if appellant
recovered from his surgery enough to hire a private investigator and move to
Pennsylvania for his job, he could have obtained new counsel to appear at the
trial, even if he could not appear personally.[12] 

          Because
the trial court could have reasonably determined that appellant’s reasons for
not attending the trial that were stated in his letter and his affidavit were
not credible or were fabricated, we hold that the trial court could also have
reasonably found that the failure to appear (or failure to hire new counsel to
appear) was intentional or consciously indifferent, rather than negligent or
mistaken, even if appellant actually believed that the letter would excuse his
absence.  See Briscoe, 327 S.W.3d at 746–47.

          Because
we hold that the trial court did not abuse its discretion by finding that
appellant was consciously indifferent toward appearing at trial, we need not
address the other two Craddock elements.  See Tex. R. App.
P. 47.1; Davilla, 139 S.W.3d at 382.  We overrule appellant’s sole
issue.

Conclusion

          Having
overruled appellant’s issue, we affirm the trial court’s judgment.

 

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MEIER and GABRIEL, JJ.

 

DELIVERED:  July 21, 2011









[1]See Tex. R. App. P. 47.4.





[2]The petition was verified
by Sheri Griffin, the president of Home Theater Design Group.  Sheri affirmed
that appellee had “provided the goods and services to [appellant] under the
explicit agreement and business dealings between the parties that [appellant]
would timely pay to [appellee] the value of the goods and services.”  Appellee
attached copies of the original invoice (which itemized the goods and services)
and the most recent invoice to the petition.





[3]Appellant’s original trial
counsel called appellee’s counsel on January 25, 2010 to state that appellant
needed spinal surgery that would interfere with his ability to participate in
the February 8 trial.





[4]The trial court’s judgment
states that to the extent this letter was intended to be a motion for
continuance, the motion was denied.





[5]This procedure, a spinal
surgery, actually occurred on July 14.  Appellant attached a letter from a
doctor; the letter confirmed that appellant had an anterior cervical diskectomy
on that day and that the doctor recommended that appellant not participate in
“civil litigation . . . for approximately 3–6 months to allow for healing time
and increased sitting tolerance.”  Appellant later submitted another letter
that confirmed the July 14 surgery and advised that appellant not participate
in activities that require prolonged sitting.





[6]Appellant appeared by
counsel at the motion for new trial hearing.





[7]The Craddock test
applies to no-answer and postanswer default judgments.  See Dolgencorp,
288 S.W.3d at 926; Ivy v. Carrell, 407 S.W.2d 212, 213 (Tex. 1966).





[8]Appellant’s affidavit states,
“I . . . called the court and was advised to write a letter to the Court (but
not to the Judge) and explain my situation.”  It is unclear who appellant
actually spoke with when he “called the court.”





[9]This case, involving one
plaintiff, one defendant, and relatively simple claims, was not likely to take
long to litigate at trial.





[10]As appellee contends, how
appellant relocated from Texas to Pennsylvania without driving, sitting, or
standing “remains a mystery.”





[11]In his affidavit,
appellant stated that he “expected that because [he] had paid [his original
trial counsel] a flat fee to handle the case through trial, then if necessary,
[counsel] would appear in court on [appellant’s] behalf to handle any
rescheduling.”  This alleged expectation, however, is inconsistent with
appellant’s previous letter, which stated that before the trial date arrived,
he was in the “process of trying to hire a new attorney.”  At the end of the
hearing on appellant’s motion for new trial, the trial judge stated,
“[Appellant] says that he thought his other attorney was going to show up; but
he says he couldn’t find . . . their office . . . .  That doesn’t seem . . . to
be the truth, that he thought the attorney was going to show up.”





[12]As appellee notes,
appellant was able to obtain new counsel soon after receiving the trial court’s
judgment, when he was still recovering from his surgery.